(No. 5309. February 8, 1930.)

MRS. F. O. GARRETT, Respondent, v. HERMAN R. NEITZEL, FRANCIS H. NEITZEL and JOHN M. NEITZEL, Doing Business Under the Firm Name and Style of BANNOCK MOTOR SALES COMPANY, and H. R. NEITZEL, Appellants.

[285 Pac. 472.]

William Healy, for Appellants.

E. P. Barnes, for Respondent.

LEE, J.—Action in replevin to recover possession of an automobile alleged to have been wrongfully repossessed by defendant vendors. The defendants, H. R. Neitzel, Francis H. Neitzel and John M. Neitzel, were Chrysler dealers at Boise under the firm name and style of Bannock Motor Sales Co. Mrs. F. O. Garrett, plaintiff, charged in her complaint that, on or about September 5, 1926, she purchased of the company the automobile involved here, believing the same to be a new car as represented by the vendors, whereas, in fact, it was a second-hand car that had originally been sold one H. D. Park, and later by him traded back to the company for another model. She alleged that the second-hand nature of the car had been fraudulently

concealed from her; that its actual value when delivered to her was the sum of $1100 as opposed to the $2,066.60 she had contracted to pay; that she had paid thereon $1113.40, $250 of which represented an allowance made her on an old car she traded in. She further plead that upon discovery of the alleged fraud she took it up with the defendants who promised a satisfactory adjustment, but, no adjustment forthcoming, she discontinued her payments; whereupon the defendants wrongfully repossessed the car on December 3, 1927, and have ever since withheld it, to her damage in the sum of $5 per day. She prayed judgment for possession of the car or its theretofore plead value of $900, together with $5 damages for each day of wrongful detention.

Defendants answered, denying all allegations of fraud, and affirmatively pleading that after the discovery of the alleged fraud by plaintiff she sought and obtained from defendants certain material alterations of her original purchase agreement, in particular an extension of time for the payment of the instalments, and executed to defendants a new note for $100 due July 15, 1927, bearing ten per cent per annum interest. This, they claimed, operated as a waiver of plaintiff's alleged rights and effectually estopped her from any claim of damages.

Jury trial was had, and, motion for nonsuit and directed verdict having been denied, both general and special verdicts were returned. The general verdict was in plaintiff's favor as to the issue of possession, but allowed no damages for detention. In answer to interrogatories, the jury found that the automobile, when sold to plaintiff, had deteriorated in value $810, and that its actual value at the time of the sale was $1,050. Judgment was accordingly entered in plaintiff's favor for the possession of the car or its "admitted and conceded" value of $850. A motion for new trial having been denied, defendants appealed from both judgment and order.

The argument in their brief is devoted to three main propositions, viz., waiver and estoppel, insufficiency of the

evidence to prove plaintiff's damages equal to the remaining unpaid purchase price, and the refusal of the court to entertain evidence of certain circumstances surrounding the sale. As to the first, plaintiff had testified to the discovery of the alleged fraud, her complaint to defendants and their promise to make a satisfactory adjustment, after a special trip from Boise to plaintiff's home in Baker, Oregon, where the trouble was fully discussed; that she signed the new note of $100, and secured the extension, relying upon their promise of adjustment, and thinking it the only thing she could do, but that no satisfactory adjustment was ever had.

■■ Waiver is a matter of intent, and as such is a question of fact for the jury's determination. Giving of renewal notes and securing extensions of time after discovery of fraud in the contract do not, of themselves, operate as either waiver or estoppel. In the absence of intent to the contrary, one may always affirm a contract, and sue for damages arising from the fraud of his adversary. He has lost only his right to rescind, redress purely equitable, not legal. This principle is ably discussed in *Bean v. Bickley*, 187 Iowa, 689, 174 N. W. 675. It is also maintained in *Edwards v. Roberts*, 7 Smedes & M. (Miss.) 544; *Sell v. Mississippi River Logging Co.*, 88 Wis. 581, 60 N. W. 1065; *Graham-Jones Motor Co. v. Nutter*, 77 Colo. 74, 234 Pac. 1063.

■■ The only direct evidence as to value furnished by plaintiff was her own testimony. Defendants contend that, inasmuch as she was not qualified in this regard, her testimony was incompetent. From the record it appears that plaintiff had previously owned some six or seven used cars. Furthermore, it is a settled rule in this state that the owner of property is a competent witness to its value. (*Rankin v. Caldwell*, 15 Ida. 625, 99 Pac. 108; *Kellar v. Sproat*, 35 Ida. 273, 205 Pac. 894.) This rule was followed in 1922 by the Washington court in *Wicklund v. Allraum*, 122 Wash. 546, 211 Pac. 760, citing other numerous authorities.

■ Defendants' final proposition is of real moment. Plaintiff's witness, Jess Abbott, former salesman for de-

fendants and active in the sales negotiations with plaintiff had just testified with reference to defendant, H. R. Neitzel, who had drawn the original agreement: "He says to me, 'Didn't you tell these folks this was a second-hand car?' and I says, 'No, nor you never told me to tell them.'"

Later on, in order to counteract the resulting inference that defendant H. R. Neitzel, as principal, had purposely concealed the fraud from his agent, defendants' counsel attempted to show by the defendants Francis H., and J. M. Neitzel, that, when Abbott came to the Neitzels with plaintiff's proposal, he was informed by defendant H. R. Neitzel, as well as by the other members of the firm, that on the terms offered they would sell her only the car previously sold to Park, and that Abbott was instructed so to advise her. Objections to this line of testimony upon the grounds that it was self-serving, hearsay and incompetent were sustained. The defense then submitted an offer of proof of the same matter, the which was denied.

Defendants earnestly insist that the exclusion of this evidence was erroneous, leaving a damaging impression upon the jury. Ordinarily, their contention would be a sound one. While testimony of this kind cannot generally be introduced in the first instance, it is admissible where testimony is adduced against a party, which tends to raise an inference of some improper motive or conduct, or where some act is shown which might be prejudicial to his cause. In such instance, "it may be relevant and important for him to give an explanation which might otherwise be clearly inadmissible." (Jones on Evidence, 2d ed., par. 171.)

But, as has been stated, the defendant, H. R. Neitzel, drew the sale agreement. The offer of proof showed that the claimed instructions were given Abbott a day or two prior to September 5, 1926. The contract was signed September 6th, although it was dated on the 4th. Plaintiff had testified that defendant, H. R. Neitzel, had prepared the contract in her presence, and that he had written therein the word, "new." In this, she was directly corroborated by

her husband. The contract introduced in evidence clearly shows that the word "new," was originally written therein, but at some subsequent time it was changed to "used." Plaintiff swore that she was promised a copy of the original contract but that none was ever sent her; that, when she went to get the car, defendant, H. R. Neitzel, told her that it had just been brought up from the warehouse; that, later, at Baker, Oregon, on April 17, 1927, in discussing the promised adjustment, H. R. Neitzel told her: "You bring your car and come down to Boise, and you will be perfectly satisfied when you leave the garage, . . . . if you will go ahead and pay the payments on the car, and pay the note as it comes due, in case your husband isn't able to come, and it will go on to your new car when it comes to Boise, and you will be perfectly satisfied." The witness, Jensen, defendants' sales manager at the time of the requested adjustment, testified that the defendant, H. R. Neitzel, told him that the car in question "had been driven and had been sold to these people for a new car, and not to say anything about it, just to let them slide, and kind of treat them nice, and let them go on out."

The defendant, H. R. Neitzel, was present during the two days of trial, yet, notwithstanding these almost damagingly conclusive statements, he "opened not his mouth." "Silence, under such circumstances, is little less than a confession of guilt and a court of equity cannot be expected to say that the charges are unfounded or that the evidence is untrue, when there is nothing in the record to refute either, and when the parties charged with fraud have failed to repel it by their own testimony." (*Keller v. Gill,* 92 Md. 190, 48 Atl. 69, 71.) When evidence tends to prove a material fact imposing a liability on a party, and he can produce evidence rebutting the case made against him, if it is not founded on fact, but refuses to do so, it must be presumed that the evidence, if produced, would operate to his prejudice and support his adversary, especially where one charged with suspicious or apparently dishonorable conduct

has an opportunity to explain it, and fails to do so. (*Bone v. Hayes,* 154 Cal. 759, 99 Pac. 172, citing a host of authorities.)

In view of the foregoing, we cannot see how the exclusion of the evidence insisted upon could have precluded the defendant from clearing himself of the inferences his own conduct and statements made subsequent to the time of the alleged instructions to Abbott had abundantly created.

Judgment affirmed. Costs to respondent.

Givens, C. J., and Budge, Varian and McNaughton, JJ., concur.