(Nos. 6820 and 6821. March 24, 1941.)

SARAMAE STEARNS, a minor by Arthur J. Stearns, her guardian ad litem, Respondent, v. RICHARD L. GRAVES and RAY V. CHISHOLM, Appellants, consolidated with ARTHUR J. STEARNS and MABEL STEARNS, husband and wife, Respondents, v. RICHARD L. GRAVES and RAY V. CHISHOLM, Appellants.

[111 Pac. (2d) 882.]

Oscar W. Worthwine, for Appellants.

S. T. Schreiber and Charles F. Reddoch, for Respondents.

HOLDEN, J.—October 21, 1938, between 8:45 and 9:00 P.M., Saramae Stearns, a minor over 13 years of age, her sister Susanna, Laura Shook and Mary Wilcomb were in front of the Wilcomb home on what is commonly known as Overland Avenue. At that time, driving a Chevrolet car, one John Harris was approaching from the west. Saramae signaled Harris to stop, which he did, and Saramae then crossed the highway to where Harris stopped. They then engaged in a brief conversation after which Harris started driving away in an easterly direction. Thereupon Saramae started to return, walking in a westerly direction until she cleared the Harris car, when she started back across the street and was struck by a car owned by appellant Graves but being driven by appellant Chisholm, from the effects of which Saramae was seriously injured.

Thereafter Arthur J. Stearns and Mabel Stearns, parents of Saramae, commenced an action against appellants Graves and Chisholm to recover monies expended and expenses incurred for hospitalization and medical services made necessary, and loss of earning power claimed to have been sustained, on account of the injuries suffered by the minor daughter. An action was also commenced by Saramae Stearns by her guardian ad litem, Arthur J. Stearns, to recover damages for personal injuries so sustained. These actions were consolidated in

the district court and tried together, commencing May 27, 1940. When plaintiffs rested appellants moved for judgment of nonsuit which the court denied. At the close of all the evidence appellants again moved for judgment of nonsuit, and the motion was again denied, whereupon numerous special interrogatories, hereinafter mentioned, were submitted to the jury.

In the case prosecuted by the parents against appellants the jury returned a verdict in the sum of $1431.17, and in the case of the minor by her guardian ad litem, the jury returned a verdict of $4500. June 4, 1940, appellants moved for judgment non obstante veredicto, and for a new trial, which motions were denied. An appeal was prosecuted from the order denying a new trial and from the judgments entered upon the respective verdicts. The transcript embraces, pursuant to an order of this court, the record in both cases. And it is agreed by counsel for the respective parties that an affirmance or reversal of the judgment in the minor's action shall operate to affirm or reverse, as the case may be, the judgment in the case of the parents against appellants.

The accident out of which this litigation arose occurred on Overland Avenue. It is oiled and of standard width (20 feet). It is, appellants say, a "much traveled road." At the point where the accident occurred it runs in an easterly direction. Appellants were returning to Boise from Twin Falls (the distance between the two towns being about 140 miles), traveling, Chisholm says, at from 45 to 50 miles an hour on Highway 30. They left Twin Falls about 5:45 P.M. and arrived at the place where the accident occurred about a quarter to nine. It was then dark. The Harris car was parked on the south side of the street facing easterly, lights on, with its right wheels about a foot off the oil. The Hyde car approached from the west on its right hand, or south, side of the highway. Its lights were on. The Hyde car slowed down instead of attempting to pass around the Harris car. Chisholm (driving westerly from the east), at a point about 300 feet east of the Harris car, saw someone, a woman or girl, standing on the south side of the car. What Chisholm did, confronted with that situation, as

well as what speed he was traveling, appears from the following questions and answers:

Q. "Now, with that knowledge, and having seen that, you kept running your car, you say, at 30 miles an hour?

A. Approximately.

Q. Toward those lights?

A. I slowed down once.

Q. But you say you speeded up. When did you speed up with reference to that distance?

A. Just before I passed the Harris car.

Q. Just before you passed the Harris car. Yes. I believe you. And about what rate of speed did you make then?

A. 30 miles. I said I was going 25, sir.

Q. Oh! You had speeded up to 30. Now you had been going 25 up to the Harris car?

A. Yes.

Q. And then you poured gas into her and jumped up another five?

A. I wasn't going over 30."

Chisholm says he did not see Saramae move from the south side of the Harris car: That "I just barely saw a flash out of the corner of my eye, and I didn't know what it was, whether it was an object or just the light going out." There is evidence that after Saramae cleared the Harris car she took one or two steps on the oil pavement before she was struck by the Graves car. And there is also evidence that after she cleared the Harris car she started running across the road and collided with the Graves car. Then, too, there is evidence that when she was struck she was on the south side of Overland Avenue (where she had a right to be) and there is evidence that when struck she was on the north side of the street. The jury found in answer to certain interrogatories that Saramae did not look to the east before starting across the street; that she could not have seen the Graves car approaching if she had looked; that defendants (meaning Chisholm) were driving at approximately 41 miles an hour; that Saramae did not discover the Graves car in time to have saved herself had she realized her danger, and that she could possibly have saved herself from in-

jury "if warned of danger," Chisholm having admitted on the witness stand he didn't sound his horn when approaching the Harris car.

In limine, we are met with the contention the trial court erred in refusing to grant appellants' motion for judgment of nonsuit, directed verdict, judgment non obstante veredicto, and for new trial "which motions assigned insufficiency of the evidence to sustain verdicts or judgments, in that the evidence, among other things: (a) affirmatively showed that the plaintiff was guilty of contributory negligence; (b) that the evidence was insufficient to show the defendants had a last clear chance, or any chance to avoid the accident."

Motion for nonsuit and for directed verdict (as well as motion for judgment non obstante veredicto) admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. (*Hendrix v. City of Twin Falls*, 54 Ida. 130, 137, 138, 29 Pac. (2d) 352; *Evans v. Bannock County*, 59 Ida. 442, 449, 83 Pac. (2d) 427; *Manion v. Waybright*, 59 Ida. 643, 655, 86 Pac. (2d) 181; *Allan v. Oregon Short Line Railroad Company*, 60 Ida. 267, 272, 90 Pac. (2d) 707.)

This court is firmly committed to the rule a trial court should not take a case from the jury unless, as a matter of law, no recovery could be had upon any view which properly could be taken of the evidence. (*Evans v. Davidson*, 58 Ida. 600, 613, 77 Pac. (2d) 661.) To the same effect: (*Small v. Harrington*, 10 Ida. 499, 79 Pac. 461; *Idaho Mercantile Co. v. Kalanquin*, 7 Ida. 295, 62 Pac. 925; *Kroetch v. Empire Mill Co.*, 9 Ida. 277, 74 Pac. 868; *York v. Pacific etc. R. Co.*, 8 Ida. 574, 69 Pac. 1042; *Later v. Haywood*, 12 Ida. 78, 85 Pac. 494; *Adams v. Bunker Hill etc. Min. Co.*, 12 Ida. 637, 89 Pac. 624; *McAlinden v. St. Maries Hospital Assn.*, 28 Ida. 657, 156 Pac. 115; *Lowary v. Tuttle*, 36 Ida. 363, 210 Pac. 1006; *Colgrove v. Hayden Lake Irr. Dist.*, 40 Ida. 489, 235 Pac. 434; *Schleiff v. McDonald*, 37 Ida. 423, 216 Pac. 1044.) Nor will this court reverse the order of a trial court either denying or granting a motion for new trial unless it is patent the court has abused the sound legal discretion vested in it by law. (*Applebaum v. Stanton*, 47 Ida. 395,

401, 276 Pac. 47.) And we held in *Bennett v. Deaton,* 57 Ida. 752, 768, 68 Pac. (2d) 895, where the minds of reasonable men might differ, or where different conclusions might be reached by different minds, the questions as to the existence of negligence and contributory negligence are questions for the jury. Cited and approved in *Evans v. Davidson, supra;* see also: *Byington v. Horton,* 61 Ida. 389, 402, 102 Pac. (2d) 652, 657; *Denton v. City of Twin Falls,* 54 Ida. 35, 28 Pac. (2d) 202; *Call v. City of Burley,* 57 Ida. 58, 69, 62 Pac. (2d) 101.)

■ Whether a sounding of the horn warning Saramae of the oncoming Graves car; whether the Graves car was on its right hand side or on its left hand (or wrong) side of Overland Avenue at the moment of the accident; whether Chisholm was driving at an excessive rate of speed under the circumstances and in the situation in which he found himself; whether Chisholm, under the conditions existing at the time of the accident, should have had or did have his car under control; and, finally, whether under all the facts and circumstances in evidence, Chisholm had the last clear chance to avoid the accident, were questions for the jury (*Byington v. Horton,* 61 Ida. 389, 401, 102 Pac. (2d) 652, 657; *Asumendi v. Ferguson,* 57 Ida. 450, 460, 65 Pac. (2d) 713; *Evans v. Davidson, supra*), and the jury found against appellants.

■ That brings us to the question as to whether the court correctly instructed the jury as to the law of the last clear chance. The court instructed the jury:

[Instruction No. 11] "Negligence on the part of a person seeking to recover for injuries resulting from the negligence of another is known as 'contributory negligence.' The law of contributory negligence is this: That, though a person be injured by the negligence of another, such person cannot recover damages if the injuries complained of by him were directly due, in whole or in part, to negligence on the part of the injured person himself.

"Though the negligence of a defendant may be a proximate cause of injuries to a plaintiff, such plaintiff cannot recover if the evidence further shows that his own negligence was also a proximate cause of such injuries."

[Instruction No. 12] "You are, however, instructed

that under certain circumstances a plaintiff may recover even though he himself was guilty of negligence, which was a proximate cause of his injuries. Thus, if the defendant, aware of the plaintiff's peril, though such peril was brought about through the plaintiff's own negligence, —or if the defendant is unaware of the plaintiff's peril only because of his own carelessness, if such a defendant had, in fact, a later opportunity than the plaintiff to avert the accident, but negligently failed to avail himself of such opportunity, he is liable to the plaintiff in spite of the plaintiff's negligence.

"Hence, in this case, if you find from the evidence that the said Saramae Stearns in starting to walk across the street at the time and under the circumstances, was negligent; and you find that the defendants, Richard L. Graves and Ray V. Chisholm, were also negligent because they were driving at a speed that was excessive under the circumstances, or were negligent in any of the particulars of negligence charged against them in the complaints herein; and you find that the negligence of the said Saramae, as well as the negligence of the said defendants, were each proximate causes of the accident,— yet, I instruct you that if you find that the said defendants, Graves and Chisholm, knew of the plaintiff's danger, or would have discovered it had they exercised the vigilance which it was their duty to exercise at the time and place,—if, under such circumstances, provided you find that such were the circumstances, you further find that the defendants had an opportunity, which the said Saramae did not then or thereafter have, of avoiding the accident, and said defendants negligently failed to exercise such opportunity, then the defendants are liable in these actions in spite of the negligence of said Saramae."

[Instruction No. 13] "On this subject, I instruct you further that if you find that the said defendants at the time of the accident were negligent in that they were driving at a speed that was not reasonable or proper under the conditions then existing (see Inst. No. 10), or were driving on the wrong side of the pavement; that the said Saramae, when attempting to cross said street, did not observe the said negligence of said defendants be-

cause of her own inattention; that, had she exercised reasonable vigilance she could have seen the danger to her by reason of the said negligence of the defendants if she attempted to cross said street at that time,—if you find the foregoing facts—

"Yet, if you further find that the defendants knew of the dangerous situation in which the said Saramae had thus negligently placed herself, and the defendants knew, or had reason to realize that Saramae did not observe her peril in time to avoid harm to herself; if, under such circumstances, the evidence shows that the defendants had the opportunity to avoid harming said Saramae, but negligently failed to utilize such opportunity,—the defendants are liable to the plaintiffs in these actions in spite of the said negligence of Saramae."

It is insisted the trial court erred in the following particulars: In including in its instructions the phrases "or if the defendant is unaware of the plaintiff's peril only because of his own carelessness," "or would have discovered it had they [appellants] exercised the vigilance which it was their duty to exercise at the time and place" (of the accident), plaintiff could recover; that it did not instruct the jury appellants were not liable under the last clear chance doctrine "unless the defendants actually saw her [Saramae] in a position of peril in time to have prevented her injury by the reasonable use of the means at hand," and that "their [appellants] prior negligence made no difference."

Discussing the last clear chance doctrine in *Indianapolis Street Railway Co. v. Bolin,* 39 Ind. App. 169, 78 N. E. 210, the court said:

"It serves the broadest principles of public policy. The state is interested, not alone that justice be done in a given instance, but that the law be so declared as that it will tend to the security of life and limb. The government is dependent upon its citizenship, not only politically, but economically, and high as the duty which devolves upon the courts of protecting acquired rights of property is, is is subordinate to the one which has as its object the uninterrupted enjoyment of that personal security which is incident to human existence, and in which every indi-

vidual is entitled to the fullest protection which society can give." (Approved by this court in *Pilmer v. Boise Traction Co., Ltd.*, 14 Ida. 327, 343, 94 Pac. 432.)

Bearing in mind the underlying reason of the rule—to promote the security of life and limb—what will most effectually accomplish that humane purpose?

It will be conceded if a motorist sees a pedestrian walking toward the path of his automobile, unaware of his danger, it is the duty of such motorist to sound a warning. But suppose a motorist does not see the pedestrian, hence, gives no warning, when, by the exercise of reasonable and ordinary care he would and could have seen him and given warning of his approach, and the pedestrian is injured, may the motorist use his own carelessness and want of reasonable and ordinary care as a shield to escape liability? To hold he cannot would tend to promote the security of life and limb. But to hold he can would tend to defeat, if not largely destroy, the underlying purpose of the last clear chance doctrine. For these reasons we conclude there is no merit in appellants' last above-stated contentions.

But it is insisted the above-quoted instructions are contradictory and confusing. They are, at least, confusing, especially No. 12, as will hereinafter more fully appear. The particularly objectionable portion of these instructions is the reference to "a proximate cause" of the injury, and in referring to the negligence of both plaintiff and defendants, stating if you find "the negligence of the said Saramae as well as the negligence of the said defendants, were each proximate causes of the accident."

This court has held (*Pilmer v. Boise Traction Co., supra*), as well as many other courts, that "what is the proximate cause of an injury is a question for the jury." This holding, however, leads to the necessity of instructing the jury, as nearly as may be, as to *what constitutes* the *proximate* cause of an injury. A mere reference to the encyclopedias and digests will disclose the fact the courts have been wholly unable to agree upon a satisfactory definition of the term "proximate cause." (50 C. J., p. 836.) The textwriter for Corpus Juris says:

"Literally, the proximate cause is the cause nearest to the effect produced, but in legal terminology the term is not confined to its literal meaning. Its legal significance is distinct from the understanding of the layman, and from proximate cause in logic." (*Robertson v. Holden*, (Tex. Civ. App.) 297 S. W. 327, 332; *McGovern v. Degnon-McLean Contracting Co.*, 105 N. Y. Supp. 408, 410; 50 C. J. 837, notes 72-73-74; 92 A. L. R. 47, and supplemental note 119 A. L. R. 1041-1093.)

At any rate, it is generally understood in negligence cases that the final cause immediately antecedent to the infliction of the injury is the *proximate* cause of the injury.

There is, however, a line of authorities holding there may be *two or more proximate causes* of an injury. (*Gulf, C. & S. F. Ry. Co. v. Ballew*, (Tex. Civ. App.) 39 S. W. (2d) 180, 182; *Young v. Syracuse, B. & N. Y. R. Co.*, 61 N. Y. Supp. 202, 204; *Sweet v. Perkins*, (N. Y.) 90 N. E. 50, 51.) We are not disposed, however, to accept the latter theory.

We are rather of the opinion there can be but one *proximate* cause, although that need not, in all cases, be the *sole* cause. (*Reilly v. Buster*, (Tex. Civ. App.) 52 S. W. (2d) 521, 524; *Carter v. Ferris*, (Tex. Civ. App.) 93 S. W. (2d) 504, 508; *Boden v. Harter*, (Ky.) 41 S. W. (2d) 920, 923; *Yellow Cab Co. v. Lacy*, (Md.) 170 A. 190, 192.)

That instruction No. 12 (above quoted) was too involved and confusing is evidenced by what occurred after the jury (composed of laymen) had been out for some time and returned into court for further instruction. According to the record, at 4:50 P.M. on the day, and after, the case was submitted to the jury, they returned into court and asked for futher advice. The proceedings had at that time were as follows:

"THE COURT: The bailiff informed me that you want to ask me a question.

THE FOREMAN OF THE JURY: Yes, sir. It seems that some of us can hardly agree on just what is meant by instructions eleven and twelve.

THE COURT: May I see them? (Examining instruc-

tions.) What was the question that you want to ask? What is it that is not clear there?

THE FOREMAN: What?

THE COURT: What do you want me to explain there? Instruction eleven simply defines what is contributory negligence, and—

THE FOREMAN (Interrupting): Twelve is a continuation of eleven.

THE COURT: Practically so, it is.

THE FOREMAN: That is the way I understood it. Now I am going to read 12, if that is permissible. [Reads Instruction No. 12 as hereinbefore set out.] Now, some of us claim that he was driving, on account of his driving at an excessive rate of speed caused the damage; in other words, if he had not been driving at an excessive rate of speed, he would have had an opportunity to have seen this girl.

THE COURT: Then the question there is, Did she have the opportunity to avoid the accident, which you say he would have had and that they didn't have it, or who had the last opportunity to avoid the accident? That may not be clear.

THE FOREMAN: In other words, if neither one saw the other, the defendants are not guilty or guilty. We admit that neither one saw the other, but the ones that are in favor of the plaintiff claim that the reason that the driver did not see her was that he was driving too fast. That is the question we can't agree upon, and the ones that disagree with those that claim he was driving too fast, claim it was unavoidable, and that she stepped out from back of the car.

THE COURT: I want to ask you one question, but I don't want you to discuss that. Why didn't the defendants see the girl?

THE FOREMAN: I beg pardon.

THE COURT: Why did the defendants not see the girl, if you conclude that they did not see her? I don't want you to discuss that with me.

THE FOREMAN: That is what we were discussing, to a certain extent.

A JUROR, JOHN STEWARD: May I ask a question?

THE COURT: Yes.

MR. STEWARD: Even if we do decide that the defendants were negligent and also that the plaintiff was negligent, does it come down to who had the last possible chance?

THE COURT: That is the last clear chance.

MR. STEWARD: It comes down to that point if both parties are negligent?

THE COURT: Exactly.

THE FOREMAN: Is that all anyone wants?

A JUROR: That is all."

At the conclusion of the foregoing proceedings the jury retired. They returned into court at 6:06 the same afternoon with their verdict, signed by nine of their number.

It will at once be seen from the colloquy that took place between the judge and the foreman and the other members of the jury that they were confused as to the application of instruction No. 12. To illustrate:

"MR. STEWARD: Eve if we do decide that the defendants were negligent and also that the plaintiff was negligent, does it come down to who had the last possible chance?"

And the court answered: "That is the last clear chance." Whereupon the same juror said:

"It comes down to that point if both parties are negligent?"

"THE COURT: Exactly."

The jury may well have understood from the remark of the court that the last clear chance meant the *last possible chance,* which is not the law. There are multitudes of *possibilities* which cannot be foreseen, and yet may seem obvious after the event.

"That which cannot be perceived or imagined may quite well be *possible.*" (*Funk & Wagnalls Standard Dictionary.*)

"That which is impracticable is theoretically *possible, but* can not be done under existing conditions." (*Id.*)

 The most the law requires in these cases is the exercise of reasonable and ordinary care and diligence such as a reasonably prudent person would exercise under similar circumstances.

Furthermore, some things said by the judge at that time may well be construed to indicate to the jury the judge's view as to what it should do; for instance, the court said:

"I want to ask you one question, but I don't want you to discuss that. Why didn't the defendants see the girl?"

And after an interruption by the foreman, the court repeated:

"Why did the defendants not see the girl, if you conclude that they did not see her? I don't want you to discuss that with me."

Appellants requested 38 instructions. Many of these were refused but given in substance. Others either might have confused the jury or did not quite correctly nor clearly state the law, and were refused. Upon a studious and painstaking examination of the requested instructions in connection with those given by the trial court, we can not say the court committed reversible error in refusing the requested instructions.

**** While many errors are assigned and contentions made, there remains but one sufficiently important to merit discussion. It is that the court assumed plaintiff Saramae walked across the highway in that the court instructed the jury: "Hence, in this case, if you find from the evidence that the said Saramae Stearns in starting to *walk* across the street at the time and under the circumstances, was negligent...."

The contention the court assumed Saramae *"walked across the highway"* is without merit. The court instructed the jury: "I am not stating or intimating the merits of the contentions of either party, or stating or intimating what facts are established by the evidence." "It is your duty to determine what facts the evidence establishes, and to apply the law as given you in these instructions to the facts so determined by you, and in that way arrive at your verdict." And further: "All of these instructions should by you be read and considered together; no one of them states all of the law of the case, or states the law completely as to the whole case; but all of them when taken together state the law which governs this case and which is to be applied to the facts as you

may determine such facts to be, and which must guide and direct you in your deliberations and in arriving at your verdict." (Italics ours.)

Finally, however, we are impelled to the conclusion the instructions hereinbefore quoted were very confusing and misleading, particularly No. 12, and that the giving of such instructions together with the comments of the trial judge thereon, constitute prejudicial error rendering it imperative we reverse the judgment and grant a new trial. No costs will be allowed.

Givens, P. J., Ailshie, J., and Sutton, D. J., concur.

Morgan, J., concurs in the conclusion.

Budge, C. J., deeming himself disqualified, did not sit at the hearing or participate in the decision.