364 P.2d 146

Lot SMITH & Karl Smith, Plaintiffs-Respondents,

v.

BIG LOST RIVER IRRIGATION DISTRICT, Defendant-Appellant.

No. 8966.

Supreme Court of Idaho.

June 30, 1961.

Rehearing Denied Sept. 8, 1961.

Robert M. Kerr, Jr., Blackfoot, George
Barnard, Idaho Falls, for appellant.

Furey & Furey, Salmon, and Davison, Davison & Copple, Boise, for respondents.

KNUDSON, Justice.

Four separate cases are involved in this appeal. Pence v. Big Lost River Irriga-

tion District, 83 Idaho 393, 364 P.2d 158; Donahue v. Big Lost River Irrigation District, 83 Idaho 393, 364 P.2d 158; Johnson v. Big Lost River Irrigation District, 83 Idaho 394, 364 P.2d 159. They have been consolidated for trial and upon this appeal.

The respondents in each case (plaintiffs) seek to recover for damages allegedly caused by appellant, Big Lost River Irrigation District, in the designing, construction, maintenance and operation of an artificial channel in the Big Lost River across part of the area known as the Chilly Sinks in Custer County, Idaho. Each respondent also prays for a permanent injunction by which appellant is enjoined from further acts of altering, changing or tampering with the course, channel or mode of flow in the area above and on respondents' lands.

The Big Lost River rises in the mountainous area known as Copper Basin and flows in a generally northeasterly direction for a distance of approximately six miles where it is crossed by what is known as the Chilly Bridge. Within a short distance of said bridge the river changes its course to a generally southeasterly direction. For a considerable distance upstream from the Chilly Bridge and to about a quarter mile downstream from that bridge the river flows generally in a single channel. From a point approximately one-quarter of a mile below said bridge and extending downstream for a distance of between one and one-half and two miles there exists an area of the Chilly Sinks where the surface is made up of coarse and loose gravel where the river in its natural state lost a substantial part of its flow by seepage and percolation into the deep permeable underlying gravel. The artificial channel here involved was constructed across this area.

The artificial channel has a base width of 70 ft. and a top width of 80 ft. It is constructed chiefly of the surface gravel material and less than one-half of its base lies below the adjacent normal ground surface. Its alignment is substantially straight, generally following one of the several natural channels in that area. A number of concrete drop structures, some with downstream concrete aprons on the floor and banks, were constructed in the channel to reduce water velocities and minimize erosion. There are no headgates or other control structures at the upper end of the channel to permit control of the amount of water entering the channel. Construction of the channel occurred in 1937 and 1938 and appellant has had and exercised control and maintenance of it since its construction.

Prior to construction of the artificial channel the normal watercourse of the river as it entered that area was in one main channel and many subordinate channels referred to as "finger" channels. At the lower end of the gravelly area known as Chilly Sinks the surface flow of the river becomes more concentrated in the main

channel and what is known as the back channel and flows across the property of the respondents to the Mackay Reservoir which constitutes the main water supply for appellant district. Said reservoir is situate approximately nine air-line miles south-easterly of the downstream end of the artificial channel and respondents' ranches are situate along approximately the middle five miles of that distance.

The damages claimed by respondents allegedly occurred during the calendar years 1955, 1956, 1957 and 1958 as a result of the construction, maintenance and operation of the artificial channel, the effects of which were to

1. Divert and confine most of the flow of the Big Lost River in the Chilly Sinks area to a single artificial channel rather than allowing it to flow in its many natural water courses.

2. Decrease the area of natural channel gravels wetted during high river flows, resulting in a decrease of natural percolation of flood waters into underground storage.

3. Increase both the volume of surface runoff and the magnitude of peak discharge of the river below the artificial channel as a result of this reduction in groundwater storage.

4. Increase the normal load of gravel and debris in the river below the channel.

5. Produce rapid flooding of adjacent and downstream areas caused by failure of the artificial channel during peak flow conditions.

6. Aggravate conditions of both erosion and deposition that would not have otherwise occurred without the artificial channel.

The damages claimed in each action are not identical, however the principal damages allegedly resulting from the acts of appellant are:

(1) portions of respondents' crop and pasture lands have been eroded, washed away and destroyed;

(2) deposits of gravel, sand, silt and debris upon respondents' crop and pasture lands;

(3) destruction of respondents' irrigation diversion, installations and outlets from the river;

(4) destruction of headgates, surface irrigation ditches, fences and improvements on respondents' premises;

(5) respondents were compelled to build dikes and protective works and to change roadways, fence lines, river crossings, irrigation systems and procedure.

At the close of the trial and on June 2, 1959, separate verdicts were rendered awarding damages to each of respondents and judgments thereon regularly entered. On June 11, appellant filed, in each case, a motion for judgment notwithstanding the verdict and in the alternative to grant a new trial, which motion was denied on Au-

gust 3, 1959. On June 19, 1959, the trial court entered an "Order of Injunction" enjoining the appellant "from reconstructing any artificial channel across this said area of less than a permanent, well-constructed material of non-erosive nature, and that said channel be constructed of sufficient depth and width to carry all waters decreed to the Big Lost River Irrigation District, and that proper gates and controls be established at the head of said channel which can turn all excess water above such decreed right away from said artificial channel so that said water can be absorbed by the Sinks area as it has been absorbed prior to the original building of such artificial channel".

These appeals are from the judgment, order of injunction and order denying new trial in each of said cases.

Assignments of error No. 1 and No. 2 challenge the sufficiency of the complaint and the pre-trial rulings of the court relative to demurrers, interrogatories, demands to make more definite and certain and to furnish additional bill of particulars. The complaints, each consisting of approximately 12 typewritten pages, in substance allege that appellant constructed, maintained and operated an artificial channel in a portion of the natural course of the Big Lost River some distance upstream from respondents' property resulting in increasing the volume and velocity of water flowing across respondents' lands, causing damage in various ways.

It has long been the law of this state that one who diverts water from its natural channel and undertakes to convey the same by means of an artificial channel or canal, is liable for the exercise of reasonable care and diligence in so doing and is required to take such precautions as to prevent injury to others. In Mashburn v. St. Joe Improvement Co., 19 Idaho 30, 113 P. 92, 95, 35 L.R.A.,N.S., 824, this Court said:

"It would not be proper or lawful, however, for an individual or corporation, whether acting under a franchise from the state or not, to so increase the flow of a stream by splash dams or otherwise as to overflow, flood, and damage the lands of a riparian proprietor, * * *"

This Court, in the above cited case, also quoted the rule announced in Axtell v. Northern Pac. Ry. Co., 9 Idaho 392, 74 P. 1075:

"One who by his wrongful acts augments, diverts, or accelerates the forces of nature in such a manner as to injure another is liable for damages therefor."

In Fischer v. Davis, 19 Idaho 493, 116 P. 412, 413, this Court said:

"* * * a riparian owner of lands abutting upon a stream has no right

to place obstructions out into the stream for the purpose of changing the natural course of the river, or for any other purpose that would do damage to a riparian owner on the opposite side, or to owners of land abutting upon said stream either above or below; * * *"

A pertinent statute of long standing in this state is I.C. § 42–1204, which provides:

"The owners or constructors of ditches, canals, works or other aqueducts, and their successors in interest, using and employing the same to convey the waters of any stream or spring, whether the said ditches, canals, works or aqueducts be upon the lands owned or claimed by them, or upon other lands, must carefully keep and maintain the same, and the embankments, flumes or other conduits, by which such waters are or may be conducted, in good repair and condition, so as not to damage or in any way injure the property or premises of others."

The generally accepted applicable rule is stated in 56 Am.Jur. 505, Waters § 14, as follows:

"It is established, however, that the ordinary or natural course of water cannot lawfully be changed for the benefit of one person or class of persons to the injury of another. Accordingly, one who changes the course of a stream must do so in such manner as not to injure, or unduly interfere with the rights of, the adjoining proprietor, either above or below, or on the opposite side of the stream. Thus, he must not, by changing the direction of the flow of the stream, so increase or diminish its velocity as to cause damage to the land of the adjoining proprietor, or impair his rightful use of the stream; nor can he make any change or diversion of the stream, although on his own land, which would cause the washing of mud and debris on the land of his neighbor, to the injury of the latter, and which would not have occurred had it not been for the change in the current stream."

See also Willson v. Boise City, 20 Idaho 133, 117 P. 115, 36 L.R.A.,N.S., 1158; Burt v. Farmers' Co-operative Irr. Co., Ltd., 30 Idaho 752, 168 P. 1078; Albrethson v. Carey Valley Reservoir Co., 67 Idaho 529, 186 P.2d 853.

■ Since the respondents' amended complaints state facts sufficient to constitute a cause of action against appellant, the trial court correctly overruled appellant's demurrers.

The record does not disclose the date upon which appellant made and served its "Motion to Make More Definite and Certain", however, such motion was made wherein appellant requested that respond-

ents make their complaints more definite and certain in 42 particulars. Thereafter, and in compliance with an order of the court, respondents, in each case, on October 6, 1958, served upon appellant's counsel a bill of particulars detailing the items making up respondents' claim for compensatory damages. Appellant then moved the court for an order requiring respondents to furnish a further bill of particulars. Said motions were denied. On March 13, 1959, appellant filed interrogatories (58 in number) pursuant to IRCP, Rule 33 with a demand that respondents, fully and in detail make answer to each. Respondents regularly moved, upon five separately stated grounds, to strike said interrogatories. By order dated March 27, 1959, the court ordered said interrogatories stricken, stating the reasons therefor to be:

"* * * the matter having been previously set for trial on the 13th day of April, 1959, and the interrogatories being determined as lengthy, complex, and requiring compulation of extensive material over the period of four successive years, namely: 1955, 1956, 1957 and 1958 with further determination being requested from 1950 through 1954, and the Court being concerned with the provision that such interrogatories could not possibly be completed and made available to plaintiffs for any activity he might desire under Rule 33

IRCP, and the Court being convinced that the extensive requests of the interrogatories is neither timely nor necessary under Idaho Rules of Civil Procedure."

The principal purpose of interrogatories provided for under said IRCP, Rule 33, is to afford parties information regarding facts involved in the issues in suit to enable the proposing party to prepare for trial and to reduce the possibility of surprise in the trial. It is true that said rule should be accorded a liberal interpretation, however, it is generally recognized that a district court is vested with broad discretion to control the scope of the interrogatories and in considering objections to them. Said rule is almost identical with Rule of Civil Procedure 33, 28 U.S.C.A. which has been repeatedly considered by the Federal Courts.

In Newell v. Phillips Petroleum Co., 144 F.2d 338, 340, the Circuit Court of Appeals, Tenth Circuit, stated:

"While the rule should be accorded a liberal rather than a narrow interpretation, still the trial court is vested with reasonable discretion in determining whether a party is entitled to have interrogatories answered, and the action of the court in respect thereto will not be disturbed except in case of abuse of the discretion."

In Barron & Holtzoff, Federal Practice and Procedure, Vol. 2, § 776, page 477, it is stated:

"The district court has a broad discretion in considering objections to interrogatories and in determining whether they must be answered. An appellate court will not disturb the action of the district court in this respect unless there has been an abuse of discretion and unless the error is prejudicial."

At page 470 (§ 773) of said Vol. 2, it is further provided:

"An objection that interrogatories were served too late must be determined by the court in the exercise of its sound discretion, there being no specific provision on this point."

Further explanation of the trial court's reason for striking the interrogatories is found in the order denying a new trial, wherein the court stated:

"At the outset, it will be remembered that the Court denied certain interrogatories in this matter when it did not feel sufficient time remained for hearings before trial. Then one of counsel became ill, * * *, but with additional time being created defendant did not renew its demand for these interrogatories after the later trial date was made necessary. Therefore, the Court, in fairness to both sides, did not voluntarily amend its position."

Moreover, many of the interrogatories submitted were general in scope and would require respondents to make research and compile a great deal of detailed data and information and would necessarily involve a substantial period of time to answer. Our attention has not been called to contentions of surprise on the part of appellant during the trial and we are not convinced that appellant was prejudiced by the court's ruling. Under the circumstances we cannot say that the trial Judge abused his discretion in ruling as he did upon the motions we have discussed.

■ Appellant assigns as error the trial court's rulings on evidence as to the measure of damages (assignment No. 3) and rulings on evidence of damages not covered by the bill of particulars (assignment No. 4). Appellant complains that the court "permitted the respondents to prove their damages, not by the specific items set out in the complaint and bill of particulars" but by the "difference between the fair market value of the ranch before any alleged flooding in 1955 and after any alleged flooding in 1958, or the amount by which the fair market value had been decreased during those four years". It must be kept in mind that the court limited the decrease in value to the decrease which, during said four years, was caused or brought about by rea-

son of the negligent and wrongful action of appellant.

This Court, in cases of this nature, has consistently followed the rule of law announced many years ago in Young v. Extension Ditch Co., 13 Idaho 174, 89 P. 296, 298, as follows:

"If land is taken or the value thereof totally destroyed, the owner is entitled to recover the actual cash value of the land at the time of the taking or destruction, with legal interest thereon to the time of the trial.

"If the land is permanently injured, but not totally destroyed, the owner will be entitled to recover the difference between the actual cash value at a time immediately preceding the injury and the actual cash value of the land in the condition it was immediately after the injury, with legal interest thereon to the time of the trial.

"If the land is temporarily but not permanently injured, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury, with legal interest thereon to the time of the trial."

See also Boise Valley Construction Co. v. Kroeger, 17 Idaho 384, 105 P. 1070, 28 L.R.A.,N.S., 968; Alesko v. Union Pac. R. R. Co., 62 Idaho 235, 109 P.2d 874;

Langley v. Deshazer, 78 Idaho 376, 304 P.2d 1104; the general rule of damages is stated in 56 Am.Jur. 526, § 40, as:

"The damages to be recovered for the obstruction of or other interference with natural watercourses depend not only on the kind of action brought, that is, whether it is for temporary or permanent damages, but also upon the character of the injury or nuisance as temporary or permanent. In actions by riparian owners for damages for injuries occasioned by interference with the flow of a stream, as in other actions for injuries to real property, the damages are, as a general rule, measured by the diminution in the market value of the property, where the injury is of a permanent nature. In the case of temporary or occasional injuries the measure of damages is the diminution in the rental value of the property, or, according to the rule in some jurisdictions, the cost of restoring the land to its former condition, when this is less than the diminution in the market value of the whole property by reason of the injury. A recovery may be had for profits shown with reasonable certainty to have been lost as the proximate result of the interference complained of."

It is true that the witnesses who expressed opinions as to the damages did not

consider each and every item detailed in the bill of particulars. In fact it would have been improper for them to do so in view of the fact that the bill of particulars contained items of claimed damages which were ruled by the court as not recoverable. The fact that the experts who expressed an opinion as to the difference in the fair market value before and after the alleged damage, took into consideration the changed conditions such as diminished productivity and carrying capacity of the ranch, brought about by the damages complained of, was in no respect prejudicial to appellant. The items which such witnesses took into consideration in arriving at their appraisal of the damage were proper matters concerning which they could be cross-examined and by which the jury would be aided in determining the weight to be given their opinions.

Appellant's complaint that the owner was permitted to give an opinion as to the damage he sustained, without being able to place a value on any one item of such damage, is without merit. It is a settled rule in this state that the owner of property is a competent witness to its value. Garrett v. Neitzel, 48 Idaho 727, 285 P. 472; Beech v. American Surety Co., 56 Idaho 159, 51 P.2d 213; Mitchell v. Dyer, 81 Idaho 344, 341 P.2d 891. The owner's failure or inability to explain the basis for his appraisement may affect the weight of his testimony, but it does not disqualify him as a witness.

The verdict in each case was less than the total of the damages specified in the bill of particulars. It must be assumed that appellant anticipated the court would require that any damages allowed would be governed by correct rules and since the evidence of damages was admitted under proper rules, there was no prejudicial error as claimed under said assignments.

Appellant assigns error to the rulings on evidence as testified to by witnesses McDowell, Newell and Vaught (assignments No. 5 and No. 6). Appellant calls particular attention to testimony of the witness Melford Vaught contending that he was not qualified to express an opinion as to the damages in issue; that he applied an erroneous measure of damages; that he failed to distinguish between damage caused by faulty original planning and construction; and other similar reasons. This witness was 62 years of age and had been engaged in ranching all of his life. From 1909 to 1945 he lived upon and operated the ranch now belonging to respondent Donahue. He also had operated a ranch four miles below Mackay and has since operated a ranch at Bruneau, Idaho. He had appraised several ranches for others and had some experience in appraising flood damages. He was an active official of the Idaho·

Cattlemen and American National Cattlemen organizations. He testified that he was familiar with the ranches owned by respondents Donahue and Johnson, although from 1945 until shortly before the trial he had not seen said ranches. He was permitted to express his opinion regarding the depreciation in fair market value of the Donahue and Johnson ranches during the years 1955 to 1958, both inclusive, excluding such damage as he felt would have been caused by natural causes not affected by the artificial channel.

It must be conceded that the witness Vaught was not especially well qualified to express an opinion as to damages in these cases. However the admission of opinion evidence is largely discretionary with the trial court and its weight and effect is for the trier of facts. Jensen v. Boise-Kuna Irr. Dist., 75 Idaho 133, 269 P.2d 755; 3 Am.Jur. 592, Appeal and Error, § 1036.

The question propounded to the witness stated the correct measure of damages and we do not consider the trial court's ruling as prejudicial to appellant. We reach the same conclusion as concerns the testimony of the witnesses McDowell and Newell.

After respondents had rested, appellant moved to amend its answer by adding a fifth defense alleging that by notorious and adverse use for more than five years prior to 1955, appellant had acquired a prescriptive right and easement to flow across respondents' land any water saved or conserved by the artificial channel works in the Chilly Sinks area. The court denied said motion and such ruling is complained of in assignment of error No. 8. Respondents resisted said motion claiming surprise and contending that such defense would raise factual questions which were not in issue under the original pleadings; that the motion was made too late; that respondents would be deprived of the right to introduce evidence which they might have desired to offer in consequence of such amendment. The court concluded that the proposed amendment was not one to conform the pleadings to the proof and denied it. We feel that the court was justified in reaching such conclusion and since the matter of amendment to pleadings is largely within the discretion of the trial court, there was no reversible error.

Appellant claims error (assignment No. 9) by reason of the giving of the following quoted portion of instruction No. 23, to-wit:

"Anyone who diverts the waters of a stream into an artificial channel or reconstructed channel must build, operate and maintain such artificial channel or reconstructed channel in such manner that it will carry such rainfall, cloudburst, or high spring flood or

freshet without causing damage to others."

Said instruction, in substance, was approved in Wilson v. Boise City, 6 Idaho 391, 55 P. 887, Willson v. Boise City, 20 Idaho 133, 117 P. 115, 36 L.R.A.,N.S., 1158; see also I.C. § 42–1204. Although the facts of said cited cases were not precisely analogous to the instant cases the complaints here involved alleged that by the construction of the artificial channel, the appellant attempted to divert or confine the full flow of the normal main channel of Big Lost River. Evidence was introduced in support of such allegation showing that no floodgate or other installation was constructed at the head of the artificial channel, or point of diversion, whereby the pressure of peak flows on the artificial channel could be alleviated. The evidence further discloses that on numerous occasions and at various places the water overflowed the banks of the artificial channel, washing out substantial sections of it which, as contended by respondents, released the water in great volume and velocity causing a surge upon and across the properties of respondents.

Appellant contends that such instruction No. 23 is in conflict with instruction No. 26, which provides as follows:

"The defendant would be liable only for such injury or damages, if any, as is proximately caused by its own negligence, and if you find that the injury or damage would have resulted from high or flood waters, regardless of the artificial channel, then the negligence of the defendant would not be the proximate cause, but a remote cause, and the high or flood waters would in such case be the proximate cause, and no recovery could be awarded to the plaintiff."

We do not agree with appellant's said contention.

The import of the wording complained of in instruction 23 is that one who undertakes the construction of an artificial channel must build, operate and maintain it in such manner as not to cause damage to others. Instruction No. 26 applies if the artificial channel is not the proximate cause of the damage.

Under assignment No. 10 appellant contends that the following quoted portion of instruction No. 29 is a misstatement of the law:

"However, if you find that plaintiffs or any of them sustained damage and that such damage resulted from a combination of the natural forces of nature and negligent acts of defendant in improperly operating and maintaining the artificial channel, and that said negligent acts of defendant were a major contributing factor to such damage, then plaintiffs, or any of them so damaged, are entitled to be compensated

for their damage, because the rule that one who, by his wrongful acts, augments, diverts, or accelerates the forces of nature in such a manner as to injure another is liable in damages therefor."

Appellant contends that said language allows the jury to place liability upon appellant for all the damage caused by nature and by negligence of appellant, even though the greater damage may have been caused by nature. The rule referred to in said instruction is stated and referred to in Mashburn v. St. Joe Improvement Co., supra, and in Axtell v. Northern Pac. Ry. Co., supra. Appellant's contention is not sustained by the record since the succeeding instruction No. 30 expressly detailed the law as contended for by appellant in the following language:

"You are instructed that if you should find that injury was sustained by the plaintiffs, and if you should further find that one of such concurring causes was a natural force or an act of God, that the defendant is then liable only for such proportionate amount of the damage as is attributable to its own negligence, and is not responsible for more than its share of the damage done."

Appellant argues under assignment No. 11, that instruction No. 31 is an improper statement of the measure of damages in that it allows the jury to find as damages the difference in the market values of the property over a period of years, without any consideration of changes in market prices during a four-year period, or without consideration of damage from any other cause. We have hereinbefore discussed the correct rule governing the measure of damages to real estate in cases of this nature and the instruction complained of is in conformity with the rule adopted in this state. In the instant case it was alleged and evidence was introduced tending to establish that respondents' damages were caused over a period of four years and every witness expressing an opinion as to the damages was directed to estimate such damage in the manner stated in said rule, i. e., the difference in the fair market value of the premises before and after the damage. Instruction No. 31 is a proper statement of the applicable law.

Under assignments of error No. 12 and No. 13 appellant contends that the court erred in refusing to give its requested instructions numbered 2 and 3. These assignments are not discussed in appellant's brief, however, two California cases, San Gabriel Valley Country Club v. Los Angeles County, 182 Cal. 392, 188 P. 554, 9 A.L.R. 1200; and Archer v. City of Los Angeles, Cal.App., 102 P.2d 791, are cited as authorities for such instructions. We do not agree that said cases uphold appellant's requested instructions. In the case of San Gabriel Valley Country Club v. Los Angeles

County, supra, the court stated that the question presented was [182 Cal. 392, 188 P. 556]:

"Has the owner of land through which a natural water channel runs a right to complain of an improvement of that channel above his land (for the substitute conduit is but that) *and has no other effect,* when the improvement is a reasonable one for the benefit of the upper land through which the channel runs *and is not constructed in an unreasonable manner?*" (Emphasis supplied.)

It will be noted that the court considered that the constructed channel *had no other effect* upon the owner's property and that it *was constructed in a reasonable manner.* In the instant cases the triers of fact found that the effect of the artificial channel caused respondents substantial damages. The requested instructions do not correctly state the law applicable in these cases.

▇▇▇▇▇▇ Appellant requested an instruction (one in connection with each of the four cases) wherein some of the items of damage as stated in respondents' bill of particulars were set forth and it was therein directed that such items constitute the maximum compensatory damages which could be allowed respondents. The court's refusal to give said instructions is assigned as error (assignment No. 14). Although this assignment is not separately discussed in appellant's brief, we deem it proper to mention the following facts. At the conclusion of the introduction of evidence the court granted respondents' motion to conform their pleadings to their proof with respect to damages. The granting of such motion, which is within the sound discretion of the trial court, is authorized under IRCP, Rule 15(b), the pertinent part of which provides:

"If [the] evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

In objecting to such motion appellant did not claim prejudice or surprise and no showing of prejudice was made. The jury was instructed as to the correct rule of damages and the verdict in each case was less than the amount claimed in the respective bills of particulars. It is our opinion that the court's refusal did not constitute prejudicial error.

Appellant also assigns as error the court's action in denying appellant's motion for a directed verdict and its motion for judg-

ment notwithstanding the verdicts, or in the alternative, for a new trial (assignments No. 7 and No. 15).

A motion for directed verdict and a motion for judgment notwithstanding the verdict each admits the truth of the adversary's evidence and every inference of fact which may be legitimately drawn therefrom. Hendrix v. City of Twin Falls, 54 Idaho 130, 29 P.2d 352; Griffin v. Clark, 55 Idaho 364, 42 P.2d 297; Hobson v. Security State Bank, 56 Idaho 601, 57 P.2d 685; Stearns v. Graves, 62 Idaho 312, 111 P.2d 882. This Court is firmly committed to the rule that a trial court should not take a case from the jury unless, as a matter of law, no recovery could be had upon any view which properly could be taken of the evidence. Stearns v. Graves, supra.

It is argued that the verdicts should be set aside for the reason that the opinions, expressed by respondents' witnesses as to the cause of the damage, are opposed to the laws of nature that lie within the scope of common knowledge or well known and established scientific principles. With such contention we cannot agree. The record of evidence introduced is voluminous. Expert witnesses testified at length in support of respondents' contention that the presence of the artificial channel and appellant's maintenance and operation of it was responsible for the damages here complained of. Contradictory evidence was introduced by appellant.

The expert witnesses were, by reason of extended special study, training and experience, exceptionally well qualified to express an opinion regarding the damage in issue both as to its existence and causation. They were likewise well qualified to express an opinion as to the period of time during which the damage occurred. It may be that the minds of reasonable men might differ as to the cause or extent of the damage, or the amount of compensation that should be paid therefor, but we cannot say that there is no competent evidence to support the verdicts reached.

It is also well settled law in this state that the trial court possesses a discretion which should be exercised wisely in granting or refusing to grant new trials and that the appellate court will not reverse the trial court in the exercise of such discretion, unless it clearly appears to have been abused. Hall v. Bannock County, 81 Idaho 256, 340 P.2d 855; Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430; Stearns v. Graves, supra; Applebaum v. Stanton, 47 Idaho 395, 276 P. 47; Say v. Hodgin, 20 Idaho 64, 116 P. 410.

Appellant strenuously and sincerely argues that if it be found that the artificial channel did, to some extent, increase the volume and velocity of the waters involved, the damage thereby caused would be insignificant as compared to the damage caused by nature. To quote at length from the

record would unduly extend this opinion, however, after thorough examination of the record we are convinced that there was an abundance of evidence before the jury to justify them in believing that much of the damage sustained by respondents was traceable directly to the wrongful acts of appellant. In this connection attention is called to the testimony of one expert who testified that, after extensive study, it was his opinion that as a result of the maintenance and operation of the artificial channel here involved, the volume of water flowing through respondents' properties during the period specified in respondents' complaints, was increased in the neighborhood of 30,000 acre feet per season. Some witnesses expressed the opinion that respondents would not have suffered any damage during the years involved had it not been for the existence of the artificial channel. Those who were asked to express an opinion as to the extent of monetary damage sustained by respondents, were requested to state their appraisement of such damage "excluding therefrom erosions or damage from natural causes that might have occurred during that period".

The members of the jury having had opportunity to see the witnesses, observe the manner of their testimony, note their apparent candor and knowledge of the matters concerning which they were being examined, were entitled to give such weight to the evidence introduced as in their judgment was proper. We have found no error which would justify a reversal of the awards made in these cases.

In the statement of facts in this opinion we have quoted the material provisions of the Order of Injunction which was entered 17 days after date of judgment. This order purports to restrict the construction of an artificial channel in the area known as Chilly Sinks unless it be a permanent structure composed of non-erosive material and of sufficient capacity to carry all water decreed to the Big Lost River Irrigation District. The cases here involved are not concerned with the amount of water which has been decreed to appellant or to which it may be entitled. We do not consider it the province of the court to prescribe the nature, purpose or kind of a structure that may be constructed in the area referred to, the important thing to be remembered by anyone who undertakes such construction is that such structure does not cause damage to or in any way injure the properties or premises of others. (I.C. § 42–1204).

Judgments affirmed, and the order of injunction herein referred to is hereby set aside and of no further force or effect. No costs allowed.

TAYLOR, C. J., and SMITH, McQUADE and McFADDEN, JJ., concur.