JOHNSON *v.* GRAND TRUNK WESTERN RAILROAD CO.

1. NEGLIGENCE—RESTS UPON DUTY TO EXERCISE DUE CARE.
   The doctrine of negligence rests upon the duty of every person to exercise due care in his conduct towards others from which injury may result.

2. SAME—INJURED PARTY MAY NOT RECOVER WHERE BOTH PARTIES NEGLIGENT—COMPARATIVE NEGLIGENCE NOT RECOGNIZED.
   If it be determined that, at the time of the occurrence of an accident resulting in injury, neither party was in the exercise of due care, the injured party is without redress, as the rule of comparative negligence is not recognized in this State.

3. RAILROADS—NEGLIGENCE—BACKING CARS ACROSS STREET WITHOUT WARNING.
   It was negligence for the employees of a railroad company to back the tender, locomotive, and attached cars across a street without having a man on the rear end of the tender to warn persons of impending danger, in violation of an ordinance of the city and of an express rule of the company.

4. SAME—RAILROAD TRACK IS NOTICE OF DANGER.
   A railroad track is a known place of danger, knowledge or notice of which is knowledge or notice of danger, and this applies equally to a side track.

5. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.
   A pedestrian who stood upon a side track which crossed a public street without looking in the direction from which cars were being backed toward her, and who was struck and injured by them, was guilty of contributory negligence as matter of law.

6. SAME—GROSS NEGLIGENCE—DISCOVERED NEGLIGENCE.
   Plaintiff's claim that, under the evidence, the jury might have found defendant guilty of such gross and reckless negligence as to excuse plaintiff's contributory negligence, *held*, not supported by the record, from which it is apparent that the fireman's statement that he saw plaintiff before the accident was an error.

On application of "doctrine of last clear chance" where danger not actually discovered in time to have averted accident, see annotation in 55 L. R. A. 418; 36 L. R. A. (N. S.) 957.

7. Negligence—When Doctrine of "Last Clear Chance" Applicable.

> Knowledge of the existence of a position of peril may be imputed only when there is some person actually in a position to discover, and who actually does, or, in the exercise of ordinary care should, discover the position of peril, and in the absence of such knowledge, actual or imputed, there can be no application of the so-called "last clear chance" doctrine.

8. Same—Subsequent Negligence.

> The duty to have some person in position to discover the peril may constitute negligence, but it is not "subsequent" or "after-discovered" negligence.

9. Railroads—"Last Clear Chance" Doctrine Not Applicable Where Pedestrian's Danger Not Discovered.

> Where the employees of a railroad company backed cars across a street without having a man on the rear end to warn pedestrians, and a pedestrian, without being seen by such employees, was struck and injured, the doctrine of "last clear chance," involving "subsequent" or "after-discovered" negligence, is not applicable to excuse the negligence of the pedestrian in standing in a place of danger.

Error to Lapeer; Smith (Henry H.), J. Submitted January 22, 1929. (Docket No. 16, Calendar No. 33,878.)  Decided March 28, 1929.  Rehearing denied June 20, 1929.

Case by Mamie Johnson against the Grand Trunk Western Railroad Company for personal injuries. Judgment for defendant *non obstante veredicto.* Plaintiff brings error.  Affirmed.

*John Loughnane* and *Bresnahan & Groefsema,* for appellant.

*Theodore D. Halpin, H. R. Martin,* and *Leo J. Carrigan,* for appellee.

Sharpe, J.  Defendant's passenger depot in Lapeer is on the north side of its double track, and

between Court street at the west and Saginaw street at the east, both of which cross the track at right angles. A side track leaves the north main track just west of Court street, and from this run what are called the house track, which serves the freight house, and the team track for loading. Both of these terminate at Saginaw street. Court street is 40 feet in width. From it a sidewalk leads east to the passenger depot. About noon on the 20th day of April, 1926, the plaintiff, accompanied by Mrs. Hathaway, left a factory on Saginaw street in which they were employed, walked north, crossing the double track, and then proceeded westerly along the station platform until they reached the sidewalk on the east side of Court street. They turned north and entered a nearby store, where plaintiff made a purchase. As they crossed the side track, they looked both to the east and west. Plaintiff testified that she saw some box cars standing near the freight house, but no engine. When they left the store, they proceeded diagonally across Court street to the west sidewalk. They observed a freight train coming from the west, and, while standing on the side track from three to five minutes, and looking in a southwesterly direction, a locomotive and tender, moving from four to five miles an hour, attached to two freight cars, and without a man on the rear end of the tender, backed up on this track from the east and struck them. Mrs. Hathaway was killed, and plaintiff seriously injured. In this action to recover the damages incident thereto, plaintiff had verdict. Defendant's motion for a directed verdict had been reserved, and, on its renewal, a judgment notwithstanding the verdict was entered in its favor. Plaintiff seeks review by writ of error.

The doctrine of negligence rests upon the duty of every person to exercise due care in his conduct towards others from which injury may result. When an accident happens, resulting in injury, the inquiry naturally arises: What was the proximate cause thereof; in other words, more easily understood by the layman, who was to blame for causing it? If it be determined that neither party was at the time of the occurrence in the exercise of due care, the injured party is without redress, as the rule of comparative negligence is not recognized in this State.

It was negligence for the employees of the defendant to back the tender, locomotive, and attached cars across the street without having a man on the rear end of the tender to warn persons of impending danger, in violation of an ordinance of the city and of an express rule of the defendant. This court has many times held that a railroad track is a known place of danger. *Lake Shore, etc., R. Co.* v. *Miller,* 25 Mich. 274; *Grostick* v. *Railroad Co.,* 90 Mich. 594; *Gardner* v. *Railroad Co.,* 97 Mich. 240. ''Knowledge or notice of it is knowledge or notice of danger.'' *Beaubien* v. *Railway,* 216 Mich. 391, 395. This holding equally applies to a side track. *Mynning* v. *Railroad Co.,* 59 Mich. 257. If the plaintiff, in the exercise of that care which is incumbent on a person when going on a railroad track and while standing thereon, had looked to the east, she would have discovered the perilous position in which she had placed herself, and a step or two to the north would have relieved her therefrom. Her negligence was clearly established by her own testimony. *Mollica* v. *Railroad Co.,* 170 Mich. 96; *West* v. *Railroad,* 229 Mich. 590. These acts of negligence on the part of both parties continued without interruption until the time of the collision. The obligation of each to use care

to avoid the consequences of the other's negligence was mutual. "There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other." *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 429 (12 Sup. Ct. 679).

Counsel for plaintiff contend that "defendant was guilty of such gross and reckless negligence as to excuse plaintiff's contributory negligence." In *Gibbard* v. *Cursan,* 225 Mich. 311, 320, it was said:

"If one wilfully injures another, or if his conduct in doing the injury is so wanton or reckless that it amounts to the same thing, he is guilty of more than negligence. The act is characterized by wilfulness, rather than by inadvertence, it transcends negligence—is different in kind. Where recovery is sought on the theory that the injury was caused by wilful, wanton or reckless misconduct of a defendant, as distinguished from negligence, there is no more reason for permitting the defense of contributory negligence than in a case of assault and battery. True, such misconduct in this State and elsewhere usually has been called negligence, the word being qualified by such adjectives as gross, wanton, reckless, or wilful, but this is incorrect and has a tendency to mislead."

The elements necessary to characterize the injury as wilfully inflicted are there pointed out. It is apparent that the conduct of defendant's employees on the occasion in question furnishes no sufficient basis to support such a charge.

Much of the argument of plaintiff's counsel is predicated upon their claim that under the evidence the jury might have found that the fireman on the engine saw plaintiff and her companion standing on the track, apparently oblivious of their danger, in time to have stopped the engine and avoided the accident. Defendant's counsel dispute this claim. The fireman, Francis C. Fisher, was called by plain-

tiff for cross-examination. He testified that he was one of the crew of the local freight train running from Durand to Port Huron on the day in question; that they did switching at Lapeer; that he did not know whether there was a man on the forward end of the tender, and that he could not see him if he was there. He was then asked by plaintiff's counsel: "You didn't see the accident, did you, Mr. Fisher?" and answered: "Not at the time it actually happened." On examination by defendant's counsel he again said, "I didn't see Mrs. Johnson or her companion at any time prior to the accident." On re-cross-examination, he testified that when the engine started to back up he looked to the west and saw no one, and then turned and looked to the east until after the accident happened; that the engineer's view was obstructed by a curve in the track; that his view was somewhat obstructed by the tender; that he saw a man waving his hand, but did not know what he was doing it for. On re-examination by defendant's counsel, he testified:

"*Q.* Now you saw—what first attracted your attention to the accident was the man waving his hand and seeing Mrs. Johnson? You saw Mrs. Johnson?
"*A.* After the man waved his hand.
"*Q.* Was that before or after the accident had happened, after she had been struck or before?
"*A.* That was before.
"*Q.* You didn't see the man and didn't see her until after she had been struck?
"*A.* I did not.
"*Q.* Where was she when you saw her first?
"*A.* Lying beside the rail, very close to the rail the other side of the cross-walk."

He was again interrogated by plaintiff's counsel:

"*Q.* When you first saw Mrs. Johnson lying there close to the rail of the track, the cars had al-

ready passed the point where—the rear end, the most easterly end, had already passed her, had it not?

"*A.* The rear end of the most easterly car?

"*Q.* Yes.

"*A.* Had passed her?

"*Q.* Yes.

"*A.* You mean the east end of the easterly car?

"*Q.* Yes.

"*A.* I don't believe it.

"*Q.* Was she still underneath the cars when you saw her?

"*A.* I think she was about when we stopped, I think she was past the east end. I don't recall exactly."

It is apparent that his statement that he saw the plaintiff "before" she had been struck was an error on his part, and that no attention was then paid to it by either counsel. While plaintiff's counsel preferred several requests to charge, none of them were predicated on the fact that the fireman saw the plaintiff before she was struck by the tender. Nor did the trial judge allude to such claim in ordering judgment *non obstante veredicto.* We therefore eliminate this claim from further consideration.

The declaration alleges that the defendant—

"negligently failed to warn the plaintiff of the approach of its engine, after plaintiff's position of peril became or by the exercise of reasonable care should have become known."

This allegation is one commonly spoken of as subsequent or after-discovered negligence, and involves the doctrine of "last clear chance." It presupposes that the negligence of plaintiff has placed her in a position of peril, and imposes upon the defendant the duty to avoid injury to her if possible. A breach of this duty renders a defendant guilty of negli-

gence, *disconnected with any former act.* The ap-
plicable rule was clearly stated in the somewhat
early case of *Richter* v. *Harper,* 95 Mich. 221, and
has been uniformly applied and enforced since that
time. *Kelley* v. *Keller,* 211 Mich. 404; *Halzle* v. *Har-*
*greaves,* 233 Mich. 234.

While courts have somewhat differed as to its ap-
plication when the evidence showed that the acts of
the plaintiff relied upon as establishing contributory
negligence continued until the time of the accident,
and such negligence was therefore concurrent with
the subsequent negligence of the defendant, we are
not called upon in this case to consider that ques-
tion.

The negligence of the defendant complained of,
and established by the proofs, was the act of its em-
ployees in backing the tender, engine, and cars
across the street without having a man upon the
rear end thereof to warn persons traveling thereon
of impending danger. Had he been there, it would
have been his duty to warn the plaintiff of the dan-
ger in which she had placed herself, and his neglect
to do so, when her danger was apparent to him, or
would have been apparent had he been watchful as
his duty would have required him to have been,
would sustain the charge of subsequent or after-dis-
covered negligence. The fireman did not see the
plaintiff. He testified that he did not know that
there was not a man on the rear of the tender. His
duty, as he explained it, was to watch for signals at
the front from the trainmen on the ground. It seems
to be conceded that the curve in the track obstructed
the vision of the engineer. The record is void of
proof that the duty of these men required them to be
watchful of the track in the direction in which they
were moving.

Knowledge of the existence of a position of peril can be imputed only when there is some person actually in a position to discover, and who actually does, or, in the exercise of ordinary care, should, discover the position of peril. In the absence of such knowledge, actual or imputed, there can be no application of the so-called "last clear chance" doctrine. The duty to have some person in a position to discover the peril may constitute negligence, but it is not "subsequent" or "after-discovered" negligence.

The subject of negligence is dealt with at considerable length in 20 R. C. L. pp. 12–14. We quote therefrom:

"Fault on the part of the defendant is to be found in action or nonaction accompanied by knowledge, actual or implied, of the probable results of his conduct; and, likewise, fault on the part of the person injured is to be determined by the same test.   *   *   *

"The foundation of liability, then, is knowledge— or what is deemed in law to be the same thing: opportunity by the exercise of reasonable diligence to acquire knowledge—of the peril which subsequently results in injury.   *   *   *   'Negligence presupposes a duty of taking care, and this, in turn, presupposes knowledge, or its equivalent.' "

In the syllabus of *Carlson* v. *Connecticut Co.*, 8 A. L. R. 569, it is said:

"Knowledge, actual or imputed, on the part of one accused of negligence with respect to the peril of a person injured is necessary to bring into operation the doctrine of last clear chance."

In *Putt* v. *Railway Co.*, 171 Mich. 216, it appeared that an engine and tender were backing over a street in the city of Grand Rapids at a rate of speed not exceeding six miles per hour. There was no one on

the rear of the tender. The plaintiff, a man of mature years, was familiar with the crossing. While standing on the track on which the engine and tender were backing, he was struck and quite severely injured. Neither the engineer nor the fireman saw him. The trial court instructed the jury:

"A railroad company is guilty of gross negligence if it backs a train over a public crossing, especially in a populous place, unless ordinary care is used for the protection of travelers. This is one of the questions for you to determine: Did the defendant, through its employees, discover the danger in which the plaintiff had placed himself, or by the exercise of ordinary care should have discovered it, and did they use ordinary care to prevent injury to the plaintiff?"

In reversing a judgment for plaintiff, without a new trial, after discussing the instructions given and citing authorities, it was said:

"Applying the definitions and principles laid down in the foregoing cases to the facts in the case at bar, we are of opinion that there was no evidence in the case which warranted its submission to the jury upon the question of defendant's gross negligence."

(Gross negligence was here used in the sense of subsequent or after-discovered negligence.)

The judgment is affirmed.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and POTTER, JJ., concurred.