## ANDRUSS v. NIETO.

### No. 9386.

Circuit Court of Appeals, Ninth Circuit.

May 28, 1940.

Rehearing Denied July 25, 1940.

Harry Gottesfeld, Robert L. Mann, and Walter M. Lehman, all of San Francisco, Cal., for appellant.

Hubbard & Hubbard, of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellee brought an action against appellant in the District Court of the United States for the Northern District of California, Southern Division, to recover damages for personal injuries. A jury having been waived, the trial proceeded before the court without a jury. From a judgment entered in favor of appellee, appellant appeals.

The facts in the case are substantially as follows:

Respondent, Philip Nieto, was injured on November 3, 1934, when struck by an automobile being driven by appellant, N. F.

Andruss. The accident occurred between 5:15 and 5:30 p. m. Appellant was driving easterly on the Mountain View Highway in the County of Santa Clara in the State of California. This highway runs in a general easterly and westerly direction. Near the place where the accident occurred the highway turns into, and is merged in, the Alviso Highway. The plaintiff was standing several feet west of where these roads intersect, about six feet north from the northerly edge of the paved portion of the Mountain View Highway, and beside a concrete curbing or abutment along the northerly edge of a culvert located at said place. A railroad crosses the Mountain View Highway at an obtuse angle about forty-five feet west of the culvert. The plaintiff stood east of the railroad track, between it and the Alviso Highway, facing north toward Alviso with his back to the Mountain View road, from which direction the appellant was driving. About four-tenths of a mile west of the railroad track the road curves, and east of the railroad track, at the place where the Mountain View road turns into the Alviso Highway, there is a considerable curve. Just before the accident some rain had fallen, and the highway near the intersection where the accident occurred was in a slippery condition. Appellant testified that the automobile he was driving was in excellent mechanical condition, but that somewhere between forty-five feet and sixty feet west of the culvert the car would not respond to the steering wheel but skidded over on the wrong side of the road and off the paved portion of the highway and struck the plaintiff. A witness for appellee testified that he had observed the skid marks shortly after the accident, which were more than ninety feet in length.

The automobile approached appellee from the rear without any warning, and when he heard the noise from the brakes behind him the car was so close that he was unable to escape injury. In striking him the automobile ran completely off the highway. The District Court made this finding: " * * * Said defendant then and there so negligently and carelessly drove and operated said automobile as to cause it to run off of the paved portion of said highway and to collide with the person of plaintiff. In said collision both of plaintiff's feet were caught between the front bumper of said automobile and the curbing of said culvert, which curbing projected approximately one foot above the surface of the ground. Both of plaintiff's feet were crushed and mangled to such an extent in said collision that it was necessary for both of said feet to be amputated above the ankles. At the time of said accident, defendant N. F. Andruss was driving said automobile at a dangerous and excessive rate of speed. Said defendant drove said automobile off of said highway to the north thereof and into collision with plaintiff, without giving plaintiff any warning whatever. Plaintiff at all times herein concerned exercised reasonable care for his own safety. * * *"

Appellant excepted to these findings and proposed modifications to the effect that appellant was operating his automobile in a careful, prudent manner, at a reasonable rate of speed, and that he was without fault in causing the accident. The court refused these requests. Appellant also assigned error for the court's failure to grant a nonsuit, and urges here that the evidence is insufficient to sustain the findings of fact and conclusions of law.

True, the appellant did testify that for the few seconds immediately preceding his running off the highway and crushing appellee against the concrete culvert his steering gear refused to work, although his machine was in good order; also, that he was not driving rapidly at the time he crossed the railroad track. Once in his testimony he said he was going twenty-five miles an hour; later he reduced his speed to eighteen or twenty miles per hour. Appellant, in attempting to explain the reasons for his car leaving the highway and causing the accident, is indefinite and unsatisfactory, and at times was very elusive. He could not remember in whose name his automobile was registered on that day; he tried to conceal his business connections and avoid revealing whose goods or products he was selling; he could not remember if his car had a windshield wiper on that day or if it was working or if the windshield was wet, although he admitted that it was raining at the time. At first he insisted that there was a curve in the highway about where it was crossed by the railroad track, which contributed to his losing control of his car, but actual measurement later was to the effect that the curve was four-tenths of a mile back and had nothing to do with the skidding of the car. In short, his evidence was vague, evasive, and in places contradicted by established physi-

cal facts. There was evidence that the brakes had been suddenly applied with considerable force just before the railroad track was reached. The skid marks clearly appeared for a distance of about ninety feet. Appellant admits that the pavement was wet; also, that he knew the use of the brakes on wet pavement was very liable to cause the car to skid.

Much of the evidence in the printed record is not clear to us, as a number of the witnesses used photographs and drawings in testifying and pointed out places and directions, which are not indicated in the transcript. An excerpt from appellant's testimony is illustrative of the difficulty: "A. In this picture, I was coming this way (indicating); and my car refused to go over and make that angle—that line of the highway; and went straight toward this culvert; in that way (indicating). This is the Alviso Highway into which I entered. This Mountain View Road ends at that point and goes into a blind highway, like 7th goes into Market; and I was coming this way (indicating) and my car on account of that curve in the road would not straighten itself up and maintain its position in the right lane; took a diagonal course across the highway,—across this wrong side of the highway which is very slippery; and the car bumped into and was stopped by that culvert."

■ Appellant argues against any application of the doctrine of res ipsa loquitur in this case. We think that the principle of that rule of law is applicable here under the decisions of the Supreme Court of California. "When an automobile leaves its accustomed place of travel in the street, runs upon the sidewalk, and there strikes a pedestrian, the doctrine of res ipsa loquitur has been generally held to apply. Berry on Automobiles (4th Ed.) § 405; Huddy on Automobiles (7th Ed.) § 512. In such case all the elements necessary for the application of the doctrine are present." Smith v. Hollander, 85 Cal.App. 535, 539, 259 P. 958, 959.

See also Scheuermann v. Kuetemeyer, 186 Cal. 225, 199 P. 13.

■ Aside from any application of this doctrine, and in any event, it was for the District Court to say, from all the evidence, whether defendant was guilty of negligence. The thing that happened—the leaving of its course by the automobile and running appellee down from behind while he was lawfully standing beside the unpaved portion of the highway, entirely ignorant of the approach of the automobile, and seriously injuring him when he was entirely free from any negligence on his part—is certainly not a thing that ordinarily happens if the driver is exercising due care; that is, if there is nothing wrong with the machine itself. Appellant testifies that there was nothing wrong with his machine. He sought to escape liability, first by asserting that there was a curve near the railroad track, which was an occasion for him losing control of his car in connection with the wet pavement; also, that the pavement was of a composition which made it slick; that the pavement was several inches higher in the center, which contributed to the skidding of the car; that the crossing of the railroad interfered with his driving. The evidence showed that the curve west of the railroad track was distant therefrom four-tenths of a mile, that the pavement was of rough concrete with no perceptible crown. Appellant was familiar with the surroundings, knew that he was approaching a railroad crossing, a short distance from which he would be required to make a right-angle turn. He admits knowledge that an attempt to apply brakes on wet pavement would ordinarily cause an automobile to skid. From the physical examination of conditions existing at the time it is shown that the brakes were applied with great force but a few feet from the railroad crossing and that the skid marks continued for about ninety feet, leading up to the very point of impact.

■ In view of the shifty and unsatisfactory manner in which appellant gave his testimony and its frequent lack of candor, the court was not required to accept his unsupported estimate of the rate of speed at which he said he was driving, particularly when the physical facts and the circumstances surrounding the accident lead to a different conclusion.

In determining the issue in favor of appellee we have no doubt that the trial court reached the correct decision.

Affirmed.