204 P.2d 1019

## FORD v. CONNELL.

### No. 7451.

Supreme Court of Idaho.

April 1, 1949.

Rehearing Denied April 26, 1949.

Dunlap & Dunlap, of Caldwell, for appellant.

Frank F. Kibler, of Nampa, and J. F. Martin, of Boise, for respondent.

PORTER, Justice.

The respondent came to Caldwell, Idaho, in January, 1944. He was without experience in farm work. He placed an advertisement in a newspaper seeking employment as an inexperienced farm hand. The appellant owns and operates a fruit farm in Canyon County. He answered the advertisement of

respondent. As a result of this contact, the respondent was employed by the appellant and went to work on appellant's ranch on March 20, 1944, at the agreed wages of $125 per month.

Respondent and his wife occupied a tenant house on the farm. Respondent's work consisted principally of pruning the trees, irrigating the orchard, and picking fruit. Respondent continued in this employment until the time of the accident involved in this suit, on March 16, 1945. The appellant owned a tractor which was steered by a wheel. The respondent was not an experienced tractor driver but sought experience by driving this tractor up and down the road. In January, 1945, the appellant purchased a caterpillar tractor which was operated by means of levers and brakes. Respondent's total experience in driving these two tractors prior to the accident, did not exceed thirty hours.

There is a peach orchard on appellant's farm. The east end of this orchard is comparatively level. However, towards the west end, the ground makes a fall of some twenty or thirty feet, the west part of the orchard being on a hillside. A canal runs along the west line of the orchard. During the years, a number of gopher holes have developed along the west end of the peach orchard. Irrigation water has run into these gopher holes, causing the ground to be undermined, holes to be washed out and, in some instances, the fruit trees to sink down. This condition has existed for several years and was well known to appellant.

On March 16, 1945, the respondent was engaged in disking the east portion of the peach orchard and was using the caterpillar tractor. The appellant was working with a pitchfork in that part of the orchard where the gopher holes are situated. He was engaged in throwing dead limbs and other debris into the holes.

According to the testimony of the respondent, the appellant directed him to bring the tractor down to the place where the appellant was working. The respondent had been over the ground and knew in a general way about the gopher holes. The respondent through inexperience was having difficulty in turning the tractor and could only turn it one way. He stopped the tractor and hesitated to drive over the ground where the gopher holes were located as he was afraid he would get in some place where he could not turn to the right. The appellant was about six or seven feet ahead and on the right-hand side of the tractor. The respondent asked him if it were safe to proceed and the appellant said, "Come in here and I will direct you", and motioned for respondent to come ahead. Immediately in front of the tractor was a place where the weeds had been mashed down and where fresh dirt and debris had been piled. No hole was visible to respondent.

The appellant in his testimony, denies that he directed the respondent to bring the tractor down to the west end of the orchard,

and denies that he ordered or directed the respondent to drive the tractor over the ground where the gopher holes were located, and claims to have been some distance away, not more than sixty feet, when the accident occurred. He admits that he knew it was unsafe to drive a tractor over such ground and says that it was foolish for anyone to try to do so. He admits that he gave no warning to the respondent.

The respondent started the tractor and when he reached the spot where the fresh dirt and debris had been piled, the ground caved in and the rear end of the tractor fell into the hole, pinning the respondent under the rear end of the tractor. It is unnecessary to detail the serious and permanent injuries received by the respondent as a result of the accident, as no contention is made by the appellant that the damages allowed in this suit are excessive.

Thereafter, the respondent commenced this suit to recover damages against the appellant for the injuries sustained in said accident. By his answer, the appellant denied any negligence and affirmatively alleged contributory negligence on the part of the respondent and that the respondent had assumed the risk. Thereafter, a trial was duly held in the District Court in Canyon County. The taking of testimony was completed in the forenoon and the court thereupon excused the jury until two o'clock in the afternoon. After the jury was excused, the transcript discloses that the following proceedings were had:

Judge Dunlap: If the Court please, at this time we would like to renew our previous motion for a non-suit on the same grounds as stated in the other motion, and we further move the Court to direct the jury to bring in a verdict for the defendant upon the grounds that the evidence on the part of the plaintiff has shown that he knew of the danger involved at the time he went in there and voluntarily assumed the risk;

"And the further ground that it is not pleaded in the complaint that the negligence of the defendant, if any, was the proximate cause of the injury received by the plaintiff;

"And for the further reason that there has been no evidence introduced in this case of any negligence on the part of the defendant.

"Mr. Martin: Now this may seem a little unorthodox, but at this time we move that the Court direct a verdict for the plaintiff for such amount as it shall award. In other words it takes the case from the jury and puts it in the hands of the Court.

"The Court: The motion for non-suit and for a directed verdict in behalf of the defendant is over-ruled and like the motion of the plaintiff for a directed verdict is—

"Mr. Martin: If the Court please, may I be heard.

"The Court: I guess that is the rule. The Court was asleep. This takes it away from the jury and puts it up to the Court.

"Mr. Martin: I assume the Court would like to have the transcript of the evidence before deciding the case.

"The Court: Yes, I would.

"Mr. Martin: Then it is agreed that we have the transcript prepared and each party to pay its proportionate part of the expense and the case submitted to the Court after reading the transcript.

"Judge Dunlap: That is agreeable. (Recess taken)

(Two o'clock P.M.)

(Roll call of Jury waived)

"Judge Dunlap: We would like to submit another motion.
(Jury excused after statutory admonition)

"Judge Dunlap: Comes now the defendant and moves and requests that the Court submit the case to the jury for its decision on the facts and expressly states that said defendant does not waive his right to a trial by jury on the facts in this case.

"Mr. Martin: I would like the record to show that at 11:30 this morning the case was finished and the motions made by both parties for a directed verdict; that it was agreed then that each of us would pay one-half of the cost of the transcript; that the Court would have the benefit of the transcript and that we would then, at the convenience of the Court come down here and present oral argument. Now at 2:20 this afternoon the defendant comes in and makes a motion changing our request and reversing his former motion, and at a time when I have positive information that some of the jurors know what went on and plaintiff could not hep but be prejudiced. I want the record to show that.

(Argument)

"The Court: The Court is of the opinion that when both parties make such a motion that it takes the case out of the hands of the Jury and leaves it to the Court, as was held in a case in Washingon Count, and the Court holds that this case is not entitled to go to the Jury. The motion to submit this case to the Jury comes too late. You cannot ask for a directed verdict and then come in and ask to have it submitted to the jury. The motion is denied. * * *" (ff. 426-433.)

Whereupon the court excused the jury and took the case under advisement. Thereafter the court duly made its findings of fact and conclusions of law, and entered judgment for the respondent in the sum of $7,500.39 together with costs. In due course, the appellant made a motion for a new trial which motion was by the court denied. Appellant has appealed from the judgment and from the order denying the motion for a new trial.

Appellant makes 37 assignments of error. It would unduly lengthen this opinion to discuss separately each of such assignments with the subdivisions of same. We will confine ourselves to an analysis of the contentions made by appellant under these assignments of error.

It seems logical to first consider appellant's contention that the trial court erred in taking the case from the jury after a motion by each side for a directed verdict. In 53 Am.Jur. p. 274, pars. 341 and 342, we find the following:

"The question whether, when both parties make motions for directed verdicts, the case is automatically taken from the jury and all questions, both of law and fact, are placed in the hands of the court for solution is a question upon which the authorities are in conflict. * * *

"The majority rule is that if both parties to an action at the conclusion of the testimony request the court to direct a verdict—the plaintiff moving for a verdict in his favor, and the defendant for a verdict in his favor—and make no request that the jury shall be allowed to determine any question of fact, and do not otherwise indicate any desire to avail themselves of their right to have questions of fact submitted to the jury if their respective motions are denied, the parties will be deemed to have waived the right to a trial by jury and to have constituted the court the trier of questions of both law and fact. * * * "

In the case of Oregon Short Line Railroad Company v. Mountain States Telephone and Telegraph Company, 41 Idaho 4, 237 P. 281, 282, at the close of the testimony each party made a motion for a directed verdict. The defendant's motion was granted and the jury instructed to bring in a verdict for the defendant. In discussing this situation our court said: "Here, however, both parties, on the termination of the evidence in the case, made similar requests —the plaintiff for a verdict in its favor, and the defendants for a verdict in their favor; both parties in this way voluntarily submitting the case to the court for its determination upon the evidence. In Beuttell v. Magone, 157 U.S. 154, 15 S.Ct. 566, 39 L.Ed. 654, where like requests had been made, the justice delivering the opinion says: 'This was necessarily a request that the court find the facts, and the parties are, therefore, concluded by the findings made by the court, upon which the resulting verdict was given.' In Thompson v. Simpson, 128 N.Y. 270, 28 N.E. 627, where, upon the conclusion of the evidence, each party had asked the court to direct a verdict in his favor, and the court thereupon directed a verdict for the defendant, the court said: 'The effect of a request by each party for a verdict in his favor clothed the court with the function of a jury, and it is well settled that in such case, where the party whose request is denied, does not thereupon request to go to the jury upon the facts, a verdict directed for either party stands as would the finding of a jury for the same party in the absence of any direction; and the review in this court is governed by the same rules as in ordinary cases rendered without direction.' The question seems new in this state, and is so possibly from the fact that it will seldom happen that at the close of the evidence each party will move the court for the di-

rection of a verdict in his favor. *But it seems conformable to reason that, where it is done, each party must have intended to submit the case to the court for its finding upon the facts as well as the law;* and when, as in this case, the party against whom the verdict is rendered does not ask to have the case submitted to the jury, he cannot be heard to say there was error because there was some evidence tending to support the issue in his favor." (Emphasis supplied.)

In McCall v. First Nat. Bank, 47 Idaho 519, 277 P. 562, 564, at the close of the testimony each party moved for an instructed verdict. The trial court denied the plaintiff's motion and granted the defendant's motion, and instructed the jury to bring in a verdict for the defendant. In affirming the trial court's action, this court quoted with approval from the language used in Oregon Short Line Railroad Company v. Mountain States Telephone and Telegraph Company, supra, and followed the rule therein laid down.

Apparently, the appellant does not question the majority rule but relies upon his request to go to the jury on the facts. This contention is answered in McCall v. First Nat. Bank, supra, in the following language:

"At the conclusion of the testimony, each party moved for judgment on the pleadings, and then each moved for an instructed verdict. Appellant's motion for an instructed verdict was denied, and respondents' granted, whereupon appellant's counsel said: 'If the court please, to which motion the plaintiff objects, and requests, at least—and if necessary for the record, demands—that the case go to the jury.'

"It has been held in jurisdictions where the rule quoted obtains that the defeated party cannot ask to go to the jury generally, but must specify the particular question of fact he desires submitted (citations omitted) or offer instructions with the request they be given the jury."

In 53 Am.Jur. p. 278, it is said: "* * * It seems, however, that the defeated party cannot ask to go to the jury generally, but must specify the particular question of fact which he desires submitted. * * *"

McCall v. First Nat. Bank, supra, is cited as authority for this statement.

It is generally held that the offer of instructions with a request that they be given to the jury, is sufficient to preserve the right to go to the jury. This situation generally arises when the request for directed verdict is contained in a written request submitted to the court along with requested instructions. In the case at bar, requested instructions were handed to the court during the course of the trial by the appellant. This was in accordance with the usual practice in order that the court might have an opportunity to examine the requested instructions and not be forced to delay the trial for that purpose. It does not appear that the requested instructions were offered or re-offered at the time of the

motion for directed verdict or thereafter, or in anywise referred to at the time of the request to go to the jury on the facts. The offer of such instructions was not designed to, and did not have the effect of, preserving the right to have the jury pass on the facts.

█. The appellant also urges that respondent's motion for a directed verdict was insufficient as it did not set out the grounds upon which it was based; and that appellant's motion to go to the jury was timely as the jury had not been discharged. An examination of the proceedings at the close of the trial disposes of both contentions. No objection was made questioning the sufficiency of the motion for directed verdict. It was treated by both parties and by the court as being sufficient. The appellant acquiesced when the court announced his understanding that the effect of the two motions for directed verdict was to take the case from the jury and put it into the hands of the court, and offered no objection to such procedure. He thereafter took affirmative action by joining in a stipulation for the preparation of a transcript, payment therefor, and ending with the words, "* * * *and the case submitted to the court* after reading the transcript." (Emphasis ours.) Under these circumstances, the appellant waived his right to challenge the sufficiency of respondent's motion for a directed verdict; and was not in position to thereafter maintain a motion to go to the jury on the facts.

█ The appellant contends that the evidence does not show negligence on the part of the appellant or that the same was the proximate cause of the accident; that the evidence shows contributory negligence; and that the accident resulted from a risk assumed by the respondent incident to his employment. The recital of facts at the beginning of this opinion reveals that the evidence was not such as to justify the court in deciding these questions as matters of law. The questions of negligence, contributory negligence, assumption of risk and similar questions are for the jury or the court as a trier of the facts, and are never ones of law where the evidence is such that the minds of reasonable men might differ, or where different conclusions might be reasonably reached by different minds, on such questions. Bennett v. Deaton, 57 Idaho 752, 68 P.2d 895; Adkins v. Zalasky, 59 Idaho 292, 81 P.2d 1090; Allan v. Oregon Short Line R. Co., 60 Idaho 267, 90 P.2d 707; Dawson v. Salt Lake Hardware Co., 64 Idaho 666, 136 P.2d 733. In the recent case of Lingenfelter v. Eby, 68 Idaho 134, 190 P.2d 130, 133, this court said: "* * * Moreover, this court has uniformly held while different minds might reach different conclusions on the evidence, that, where such is the case, however meager the evidence, if it is of a substantial nature and character, the findings of the trier of fact should prevail." (Citing cases.)

Appellant urges, in effect, that there is a material variance between the pleading and the proof. Section 5-901, I.C.A., provides: "5-901. Material variance defined.— No variance between the allegation in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that the party has been so misled, the court may order the pleading to be amended upon such terms as may be just."

In our opinion there is no material variance between the allegations of the complaint and the proof offered in support thereof and particularly, the appellant does not point out how he was in any way actually misled to his prejudice in maintaining his defense upon the merits. For a full discussion on this point, see Naccarato v. Village of Priest River, 68 Idaho 368, 195 P.2d 370, 373.

The record discloses that the respondent introduced evidence relative to the purchase by the respondent of the tenant house and some ground for the sum of $1,000; and that the appellant shortly after the accident, attempted to evict the respondent; and did eventually effect the removal of respondent, the purchase price being returned. Appellant contends that this testimony was immaterial and that it was error for the court to predicate a finding thereon. No objection was made by the appellant to the reception of this testimony and he cross examined to a limited extent with reference to same. In Naccarato v. Village of Priest River, supra, this court said: "* * * Evidence introduced without objection stands as evidence in the case for all purposes. Angelus Securities Corporation v. Chester, 128 Cal. App. 437, 17 P.2d 1016; Hamlin v. University of Idaho, 61 Idaho 570, 574, 104 P.2d 625. And the same is sufficient to support a finding. Powers v. Board of Public Works, 216 Cal. 546, 15 P.2d 156."

The appellant contends that the court erred in allowing $500.39 to respondent as special damages for the reason that the evidence shows that appellant paid to respondent wages at the rate of $125 per month for two and possibly three months after the accident. The record shows that the actual outlay by respondent for medical and hospital services was the sum of $500.39. There is evidence that the appellant said the accident was his fault and voluntarily offered to continue to pay the wages of the respondent during his convalescence, and to pay his medical and hospital bills. There is no suggestion in the evidence that the payments made were to be applied on the special damages or to be considered as anything other than wages.

The appellant contends that the trial court erred in sustaining objections

to various questions and in overruling objections to other questions. We have examined each of these rulings by the court and find no prejudicial error. The rulings of which complaint is made, cover only minor points which could not, and did not result in any disadvantage to appellant; and could not be made the basis for a reversal of the judgment. Joyce Brothers v. Stanfield, 33 Idaho 68, 189 P. 1104; Applebaum v. Stanton, 47 Idaho 395, 276 P. 47; Patrick v. Smith Baking Co., 64 Idaho 190, 129 P.2d 651.

Appellant urges that the court erred in refusing to make certain findings of fact requested by the appellant. An examination of these requested findings of fact discloses that they simply constitute a request that the court find all the material facts in favor of the appellant with a resulting judgment in his favor.

Finally, the appellant urges that the court erred in denying the motion for a new trial. The motion for new trial presents no questions other than those raised on the appeal from the judgment. We have hereinbefore decided such questions adversely to appellant.

It follows from the foregoing that the judgment must be and is hereby affirmed. Costs awarded to respondent.

HOLDEN, C. J., GIVENS, J., and SUTPHEN and McDOUGALL, District Judges, concur.