**UNITED STATES of America, and Union Pacific Railroad Company, Appellants,**

v.

**Isaac MARSHALL, Appellee.**

**No. 14237.**

United States Court of Appeals.
Ninth Circuit.

Jan. 30, 1956.

Rehearing Denied March 22, 1956.

Sherman F. Furey, Jr., U. S. Atty., Boise, Idaho, for appellant, United States.

Bryan P. Leverich, Salt Lake City, Utah, L. H. Anderson, E. H. Casterlin, E. C. Phoenix, Pocatello, Idaho, for appellant, Union Pacific R. Co.

B. W. Davis, Pocatello, Idaho, for appellee.

Before HEALY and BONE, Circuit Judges, and JAMES M. CARTER, District Judge.

JAMES M. CARTER, District Judge.

The action below was for personal injuries based on the claimed negligence of the United States and the Union Pacific Railroad Company, hereafter referred to as the Railroad. Jurisdiction as to the United States was based on the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b) and 2674. Jurisdiction as to the Railroad was based on diversity of citizenship, 28 U.S.C.A. § 1332.[1] After a trial, before the court without a jury, a joint and several judgment was entered against the two defendants for $75,000.-00 general damages, $3,705.75 special damages and costs. Within time, each defendant has appealed. The appeals raise the questions of the sufficiency of the evidence to support the court's finding of concurrent negligence on the part of the Railroad and the United States, and whether the United States, if negligent, is relieved from liability by the intervening negligence if any, on the part of the Railroad.

Neither the United States nor the Railroad attacks the amount of the award, neither asserts contributory negligence on the part of Marshall, and neither asserts error in the admission or rejection of evidence. When questioned by this court during argument, the United States contended the responsible negligence was that of the Railroad; and the Railroad contended the responsible negligence was that of the United States.

Marshall's amended complaint, filed May 8, 1952, sought damages for personal injuries sustained on August 23, 1951, in Bannock County, Idaho, resulting from the explosion of a tank of anhydrous ammonia gas.

Prior to August 23, 1951, the United States received at its depot at Ogden, Utah, the component parts of an ice plant, included in which were eight containers of compressed anhydrous ammonia gas, listed as a dangerous article by the Interstate Commerce Commission, 49 CFR 72.5. A green label attached to each tank, identified the contents. The

---

1. The amended complaint and findings of fact refer to plaintiff, Marshall, as a "resident" of Idaho. It was conceded at oral argument that Marshall was a citizen of Idaho, and that the parties had throughout the proceedings treated the proceeding as a diversity proceeding insofar as Marshall's case against the Railroad was concerned. The jurisdictional statements in the briefs rest jurisdiction as to the Railroad on diversity of citizenship.

tanks were thereafter crated by government employees, covering the aforementioned labels; and the dismantled ice plant, including the crated tanks of gas, was loaded on Rock Island flat car No. 90344. The government employees prepared a shipping or packing list itemizing every article contained in the car, including the tanks of anhydrous ammonia. As is the customary practice, the packing list was put in an envelope, attached to one of the shipping crates and covered with a fiber board marked "Packing List." The bill of lading was prepared from the shipping list but described the shipment as "12 Bx. Machinery NOIBN (ice plant)." [2] The destination was the Seattle Port of Embarkation.

The flat car was thereafter spotted on an outbound track, and the bill of lading was delivered to a Mr. Phipps, receiving agent for the Railroad. It was Phipps' job to see that all outbound cars were properly marked, that the proper shipping name was contained in the bill of lading and that the car was in condition for shipment. This car was merely tagged for direction.

On the evening of August 22, 1951, the flat car, containing the ice plant, was included as the tenth car of the Railroad's train which proceeded toward its destination, Seattle, Washington. About 83 miles north of Ogden, Utah, and in Idaho, about 1 mile south of Swan Lake, a journal box on the flat car caught fire. The train was brought to a stop at the station in Swan Lake where the brakeman attempted, unsuccessfully, to pull the packing from the "hot box." The train, thereafter, was cut behind the flat car in question, the front section moving on to a passing track and from there to an elevated track. The brakeman cut off the flat car and successfully pulled the packing and thought he had extinguished the fire.

The front section, less the flat car, then returned to pick up the rear section of the train. While returning, the brakeman noticed something still aglow on the abandoned car. Upon inspection a fire was found to be burning in the space between the car flooring and the lading near the location of the journal box, previously on fire. The engine then returned to the passing track, adjacent to the flat car which was on the elevated track, and an attempt was made to extinguish the fire. From such position, however, the crew was unable to reach the fire with the engine hose. The engine, therefore, moved to the elevated track, picked up the burning car, brought it back and cut it out on the passing track. The engine then returned to the elevated track so as to fight the fire from that angle. For the ensuing hour, the crew fought the fire but with no success. From the manner in which the fire reacted to the water applied, the crewmen should have known that they were dealing with a grease fire; but only water was used, since neither the train nor the Swan Lake station had any equipment to cope with a grease fire.

The burning car was later removed to the main line and placed beneath the water tower. Meanwhile Railroad employees called the town of Downey, asking assistance of their fire department. The telephone operator called Marshall, a deputy sheriff, to take word to the train that the Downey fire department, as previously requested, would be unable to assist in extinguishing the blaze. Marshall arrived at the scene with the message and, thereafter, at the request of the crew, assisted in fighting the fire. At no time was he informed of the true contents of the car, but rather was told that the lading was machinery. While Marshall assisted in fighting the fire, a tank of compressed gas exploded causing serious injury to him and others.

■ We turn first to the question as to the applicable law. As to the Railroad, jurisdiction is based on diversity of citizenship. The district court sat in Idaho. There the accident happened.

2. NOIBN means "Not otherwise indexed by name."

Idaho law applies,[2a] since the district court is in substance "another court of the State," Guaranty Trust Co. v. York, 1945, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079.

■■ As to the United States jurisdiction is based on the Tort Claims Act, 28 U.S.C.A. § 1346(b) providing for liability of the United States "if a private person, would be liable to the claimant in accordance with *the law of the place where the act or omission occurred.*" [Emphasis supplied.] The negligence of the United States occurred in Utah and the negligent condition created, continued into Idaho where the explosion occurred. The omission to use care occurred in Idaho as well as Utah. Under the Tort Claims Act, the language quoted means the place where the negligence, either of act or omission, became operative, directly causing the injury and not places where the negligence existed but was then inoperative. Therefore Idaho law would determine whether liability exists as to the United States. Air Transport Associates v. United States, 9 Cir., 1955, 221 F.2d 467, 471. See White v. United States, 9 Cir., 1951, 193 F.2d 505, 507.

■■ Negligence is ordinarily a question of fact to be resolved by the trier of fact. Ford v. Connell, 1949, 69 Idaho 183, 204 P.2d 1019; Clark v. Chrishop, 1952, 72 Idaho 340, 241 P.2d 171; Andruss v. Nieto, 9 Cir., 1940, 112 F.2d 250; United States v. De Back, 9 Cir., 1941, 118 F.2d 208; Corrigan v. San Marcos Hotel Co., 9 Cir., 1950, 182 F.2d 719. It is only where the facts are undisputed *and* where but one reasonable conclusion can be drawn therefrom that negligence becomes a question of law.

Ford v. Connell, supra; Stowers v. Union Pacific R. Co., 1951, 72 Idaho 87, 237 P.2d 1041. If the finding of negligence is supported by substantial evidence considered in the light most favorable to the prevailing party, then it should be sustained. Paramount Pest Control Service v. Brewer, 9 Cir., 1949, 177 F.2d 564; United States v. Fotopulos, 9 Cir., 1950, 180 F.2d 631; Pacific American Fisheries v. Hoof, 9 Cir., 1923, 291 F. 306; Sapp v. Gardner, 9 Cir., 1944, 143 F.2d 423.

### The Negligence of the United States.

The trial court found the United States negligent (1) in failing to mark and label the cargo as required under Secs. 73.400, 73.401, 73.402 and 73.404 of 49 CFR; and (2) in failing to describe, in the shipping order or bill of lading, the articles shipped, by the name anhydrous ammonia, as set forth in Sec. 72.5 of the ICC regulations as required under Sec. 73.427, 49 CFR.

■ We need not rest our decision alone on the alleged negligence in failing to mark and label the cargo, for we find other negligence in the record as discussed hereafter. The regulations concerning marking and labeling the cargo and exemptions therefrom are complex and confusing.[3] However, an expert witness, Hardy, an inspector for the Bureau of Explosives[4] testified the green labels should have been on the outside of the boxes containing the anhydrous ammonia.

As to the second finding of negligence against the United States in failing to describe the ammonia in the shipping order, the United States contends that the regulations do not require the designa-

---

**2a.** Where Idaho law cannot be found, we rely on general principles, found in cases of other jurisdictions or upon the Restatement of Torts, where applicable.

**3.** Regulations 149 CFR 73.302, 73.401 and 73.402.

The confusion has been eliminated by the June 2, 1953 amendment, 18 F.R. 3136, 49 CFR, 1954 Supp. 73.302, which makes clear the scope of the exemptions. Anhydrous ammonia gas would clearly, not now be exempted under our circumstances.

**4.** The fact that the Bureau of Explosives is maintained by the American Association of Railroads, would go only to the weight of the Inspector's testimony.

tion of this cargo in any other manner than was described. The United States argues that the description in the bill of lading, "12 Bx. Machinery NOIBN (ice plant)," was proper in that it was a description of the lading in its original terminology and generic sense. The cases upon which the government relies in support of its proposition involve descriptions for rate purposes and are not applicable to the instant case.

The regulations were designed to "* * * minimize the dangers to life and property incident to the transportation of explosives and other dangerous articles * * *", 49 CFR 73.10. A proper description of the cargo by the name as set forth in 49 CFR 72.5 serves as notice to the carrier and crew of any dangerous propensities of the cargo presented for shipment, thus enabling them to avoid the very type of accident which occurred in the case before us. The failure of the United States to comply with the regulations, therefore, constituted the breach of a duty owed to the plaintiff upon which liability was properly predicated.[5]

■ The United States in urging the negligence of the Railroad states "the Interstate Commerce Act and the regulations thereunder do not fix the sole measure of care chargeable to the appellant Railroad, which is nevertheless under a common law duty to exercise such additional care as is required by the circumstances of the particular case, citing Lehigh Valley Railroad Co. v. Allied Machinery Co. of America, 2 Cir., 1921, 271 F. 900; Lehigh Valley R. Co. v. John Lysaght, Limited, 2 Cir., 1921, 271 F. 906; Fidelity & Deposit Co. of Maryland v.

Lehigh Valley R. Co., 3 Cir., 1921, 275 F. 922. This is a general rule of law, Pennsylvania Steel Co. v. Elmore & Hamilton Contracting Co., 2 Cir., 1909, 175 F. 176; Hudson v. Moonier, 8 Cir., 1939, 102 F.2d 96; Armit v. Loveland, 3 Cir., 1940, 115 F.2d 308; Campbell v. Fong Wan, 1943, 60 Cal.App.2d 553, 141 P.2d 43; Callison v. Dondero, 1942, 51 Cal.App.2d 403, 124 P.2d 852; Restat.Law Torts § 286, but it applies as well against the United States.

■ We are convinced on the whole record that there was sufficient evidence to support the finding of negligence against the United States. Dangerous commodities were put in transit without sufficient notice to the numerous persons who would come into contact with them in various places and under various circumstances.

### The Negligence of the Railroad.

The Railroad contends that the lower court erred in finding the Railroad negligent in accepting tanks of anhydrous ammonia without requiring proper labeling when the Railroad "knew, or by the use of reasonable diligence would have known, that the shipment contained a dangerous commodity and was not properly marked;" and in finding the Railroad negligent in (1) permitting the fire to spread from the hot box to the car, (2) not using ordinary care in handling, controlling and extinguishing the fire, (3) in not maintaining proper fire fighting equipment, and (4) finding that the Railroad requested the help of Marshall without warning him of the dangerous lading, and (5) in concluding that the Railroad was negligent and that such negligence concurred with the negligence of the United States.

---

5. Hardy testified that government employees admitted the shipment was not in accord with the regulations. Moreover, a letter was written by a Lt. Col. who was Chief of the Transportation Division at the Ogden base, which has a bearing on the problem. A second car, NP 62199, containing ice plants and anhydrous ammonia was included in the same train in which the burned car was located. On August 28, 1951, following the accident, the Colonel wrote the Railroad concerning car NP 62199, which was then moving toward Seattle, and stated, "Included in the shipment is four (4) cylinders of Anhydrous ammonia packed in box No. 5. The cylinders bear green labels, however, *this information was omitted from the bill of lading*. Request notation green labels for box No. 5 be included in the billing. Bill of lading was signed 21 Aug. 51 by the carrier." [emphasis supplied].

■ Negligence presupposes the existence of a duty owed to the plaintiff. Marshall's recovery cannot be based on any negligence of Railroad in the care of the cargo entrusted to it. "It is not sufficient that some duty or obligation should have been neglected by defendants, but it must have been a neglect of some duty or obligation to him who claims damages for the neglect." Chesapeake & O. R. Co. v. Mihas, 1929, 280 U. S. 102, 107, 50 S.Ct. 42, 44, 74 L.Ed. 207. The plaintiff must stand in his own right and cannot recover as the " * * * vicarious beneficiary of the breach of duty to another." Palsgraf v. Long Island R. Co., 1928, 248 N.Y. 339, 162 N.E. 99, 100, 59 A.L.R. 1253. If Marshall is to recover, the negligence upon which he relies must be predicated upon a duty owed to him.

■ Such a duty presupposes knowledge of facts or a reasonable opportunity to acquire such knowledge, which create an unreasonable risk of harm to plaintiff. A defendant cannot be held responsible on the theory of negligence for an injury resulting from an act or omission on his part unless it can be shown that the defendant had knowledge or its equivalent—opportunity by the exercise of reasonable diligence to acquire knowledge—of the hazard to which plaintiff has been subjected. See Johnson v. Grand Trunk Western R. Co., 1929, 246 Mich. 52, 224 N.W. 448, 450, 451; Lejeune v. General Petro. Corp. of California, 1932, 128 Cal. App. 404, 18 P.2d 429; 45 Corp.Jur. 651–660; 65 C.J.S., Negligence, § 5; 38 Am. Jur. 665.

■ Viewing the evidence in the light most favorable to the prevailing party, Marshall, the record herein discloses substantial evidence in support of the lower court's finding that the Railroad had opportunity to acquire knowledge and was negligent. Phipps, agent of the Railroad and a man of many years of rail transportation experience, was required to check all cars leaving the depot; and to see that there was a proper description in the bill of lading of the articles involved and to mark those cars containing dangerous articles, regardless of the description contained in the shipping papers. The cargo here, was described as "12 bx. Machinery NOIBN (ice plant)." It is common knowledge that compressed gas is used in the making of ice; the Ogden Army depot was the source of many shipments of dangerous articles; Phipps knew the source of the shipment here involved; the shipping list tacked to the boxes was easily accessible to Phipps. Phipps, therefore, should have been suspicious of the cargo and investigated into the exact nature of the car's contents.

Little, the train conductor and a man of many years of rail experience, also knew the source of the cargo, and the general type of articles issuing from the Ogden Army depot. Heller, the brakeman, expressed to Little the belief that the car might explode, and significantly, Heller was a mile from the scene when the explosion occurred. At all times, the packing list was conveniently accessible to Little. He could have, and should have, determined the exact contents of the shipment.

More important is the fact that when Russey, the road foreman of engines, arrived, before the flat car was moved under the water spout and before the explosion, he inquired of Conductor Little the nature of the lading in the car because "a government lading makes you a little apprehensive" and "can mean anything, it can mean explosives, ammunition or anything, gasoline,—trucks." From the bill of lading Little had made up his train book describing the nature of the lading or property on each car. The two cars with the ice plants were included only in his book as "machinery" and no reference appeared as to "ice plant." When asked by Russey, the foreman and Heller the brakeman, before the explosion, as to the nature of the lading, Little informed each that the lading was "just machinery" without making further reference to the bill of lading showing also "ice plant."

At this crucial period when inquiry was being made as to the character of

the lading, there was clearly negligence on Little's part in failing to accurately inform the others that the car carried an ice plant. Such information supplied at that time, coupled with the foreman's apprehension, and the common knowledge that ice plants are operated with ammonia, would have avoided the injury to Marshall and others.

The grease seal of the journal box in question was not in place upon inspection the day following the explosion. It was not known whether the seal had been burned in the fire or was never in place. It would be reasonable to infer that the seal was never in place and that such contributed to the spread of the fire from the journal box to the body of the car. The flat car was towed back and forth a number of times during the blaze which undoubtedly fanned the fire and increased the intensity of the blaze. Furthermore, neither the train nor the Swan Lake station had fire equipment on hand with which to cope with a grease fire.

We thus find sufficient competent evidence in the record as a whole in support of the District court's finding that the Railroad, charged with knowledge of the dangerous shipment, was negligent in permitting the fire to spread, in not extinguishing the fire, and in not warning Marshall of his dangerous position; and that such was the direct and proximate cause of his injury.

### The negligence of the Railroad was an intervening but not a superseding cause.

A basic and hotly contested question in the case, is that of proximate causation. Though the United States was negligent, is it relieved from liability by the intervening negligence of the Railroad?

The law of Idaho controls on this question if its courts have spoken on it; if not we must determine what Idaho courts would say. Since we find no Idaho case in point [6] on the problem, we rest on decision of the principles of the Restatement of Torts.

Much confusion has been injected into the law of negligence and causation by the use of terms to which different authors, and judges have given different meaning. We think reference by judges to the terms and definitions used in the Restatement of Torts will tend to end this confusion. In the Restatement of Torts "intervening force" and "superseding cause" are used precisely. Section 440 of the Restatement of Torts defines a superseding cause. "A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about."

Section 441 of the Restatement of Torts defines an Intervening Force. "(1) An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.

"(2) Whether the active operation of an intervening force prevents the actor's antecedent negligence from being a legal cause in bringing about harm to another is determined by the rules stated in

6. Concurrent acts of negligence, though independent, may constitute the proximate cause of plaintiff's injury. Valles v. Union Pac. R. Co., 1951, 72 Idaho 231, 238 P.2d 1154. Clark v. Tarr, 1954, 75 Idaho 251, 270 P.2d 1016, 1017. These holdings on concurrent negligence are in accord with the Restatement of Torts, Sections 441 (Comment (d)), 875 and 879. But compare two earlier cases, Stearns v. Graves, 1941, 62 Idaho 312, 111 P.2d 882, and Chatterton v. Pocatello Post, 1950, 70 Idaho 480, 223 P.2d 389, 20 A.L.R.2d 783.

Carron v. Guido, 1934, 54 Idaho 494, 33 P.2d 345, 347, recognizes that every intervening act does not break the chain of causation. The court said:

"On the question of proximate cause Binford v. Johnston, 82 Ind. 426, 42 Am. Rep. 508, is in point. * * * 'It is firmly settled that the intervention of a third person or of other and new direct causes does not preclude a recovery if the injury was the natural or probable result of the original wrong. * * * The rule goes so far as to hold that the original wrong-doer is responsible, even though the agency of a second wrong-doer intervened.' * * * "

Section 442 to 453." We later consider such of these sections as are applicable.

The comment on Subsection (2) of Section 441, states p. 1187:

"d. The active operation of an intervening force may or may not be a superseding cause which relieves the actor from liability for another's harm occurring thereafter;" and " * * * both the actor and the third person are concurrently liable * * * although the actor's conduct has ceased to operate actively and has merely created a condition which is made harmful by the operation of the intervening force set in motion by the third person's negligent or otherwise wrongful conduct. However, while there is concurrent liability, the two forces are not concurrent causes as that term is customarily used. To be a concurrent cause, the effects of the negligent conduct of both the actor and the third person must be in active and substantially simultaneous operation (See Sec. 439)."

Our problem therefore does not, strictly speaking, concern concurrent causes, since the negligence of the United States was passive and the negligence of the Railroad was active.[7] The acts of the United States created a condition, i. e. tanks of anhydrous ammonia, boxed up without label or warning, and without adequate description in the way-bill, were placed on a Railroad flat car. Railroad's negligence acted on and against the condition thus created. Within the rules above, the acts of the Railroad were an intervening force or cause. The legal question is, were they a superseding cause so as to relieve the United States from liability?

Section 447 of the Restatement of Torts reads:

"Negligence of Intervening Acts.

"The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of a third person was done would not regard it as highly extraordinary that the third person had so acted." * * *

To determine whether the acts of the Railroad constitute a *superseding* cause, we test our factual situation by the rule stated in Section 447 of the Restatement (supra). The United States in permitting the unmarked container of ammonia to be placed on the Railroad car, and in issuing the improper bill of lading "should have realized that a third person (the Railroad) might so act," (Sec. 447 (a) (supra) i. e. should have realized that fires in journal boxes were not unusual and unless controlled or extinguished can set fire to railway car beds and material carried thereon; and that the Railroad might call in other persons, like Marshall, to fight the fire; that where no markings or warnings existed on the crates as to the ammonia and descriptions did not appear in the bills of lading, that the Railroad would permit such persons to be closer and less cautious than had such markings, warnings, or descriptions, existed; and, finally that

---

7. The comment on § 441(1), Restatement of Torts, p. 1186, defines these terms.

"b. 'Active' and 'passive' negligence. The cases in which the effect of the operation of an intervening force may be important in determining whether the negligent actor is liable for another's harm are usually, although not exclusively, cases in which the actor's negligence has created a situation harmless unless

something further occurs, but capable of being made dangerous by the operation of some new force and in which the intervening force makes a potentially dangerous situation injurious. In such cases the actor's negligence is often called passive negligence, while the third person's negligence, which sets the intervening force in active operation, is called active negligence."

such persons might be injured if the ammonia heated, expanded and exploded.

Likewise, "a reasonable man knowing the situation existing when the act of the third person (Railroad) was done would not regard it as highly extraordinary that the third person (Railroad) had so acted * * * ", § 447(b) (supra). By this test also there was nothing extraordinary in the Railroad's negligence in permitting the fire to get out of control and the remaining sequence of events which were caused directly thereby and brought Marshall to the scene of the fire.

 The subject of proximate cause is a mixed question of law and fact. It is only in rare cases where the facts are undisputed and are of such clearness that the inferences deducible therefrom appear so immediately evident as to be incapable of reasonable doubt or difference of opinion, so that the question of proximate cause may become one of law for the court.[8] Pacific S. S. Co. v. Holt, 9 Cir., 1935, 77 F.2d 192, 198; Donegan v. Baltimore & N. Y. Ry. Co., 2 Cir., 1908, 165 F. 869, 871; Orr v. Southern Pac. Co., 9 Cir., 1955, 226 F.2d 841. The court is thus limited to an inquiry as to whether the facts reasonably support the inference drawn therefrom. Hartje v. Olcott, 1931, 116 Cal.App. 712, 3 P.2d 340. The trial court found that the end result and the damage to Marshall was reasonably foreseeable. The test set forth in Sec. 447 of the Restatement is essentially one of reasonable foreseeability.[9]

8. Schmidt v. United States, 10 Cir., 1950, 179 F.2d 724, arising from the granting of a motion to dismiss for failure to state a cause of action, treats the problem as one of law. The majority and the dissent both use the foreseeability test as to the happening of the result. The removal of the unexploded shells for a distance of 90 miles, would have no bearing on the foreseeability of the ultimate risk. Shells would explode as easily if moved across the road as if moved 90 miles. The case of Clark v. E. I. Dupont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, relied on by the majority, supports the dissent. The dissent is also in accord with the Restatement of Torts.

9. There is no necessary conflict between Prosser and the Restatement on this point. Prosser on Torts (Hornbook Series 1941) tests intervening acts and whether or not they relieve the original wrong-doer from liability, on the basis of foreseeability.

"If the intervening force is one which in ordinary experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent because he has failed to guard against it" * * *

"Obviously, the defendant cannot be relieved from liability by the fact that the risk, or part of the risk, to which he has subjected the plaintiff has come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence the defendant's negligence. The courts are quite generally agreed that such intervening causes will not supersede his responsibility." (Prosser, supra, p. 355-6).

Conversely, "If the defendant can foresee neither any danger of direct injury, nor any risk from an intervening force, he is simply not negligent." (Prosser, supra, p. 364).

Prosser chooses to characterize this problem as "not one of causation, which must be established first, but rather of the policy as to imposing legal responsibility." (supra, p. 352-3).

See also an early and excellent article, "The Proximate Consequences of an Act" by Prof. Joseph H. Beale, appears in 33 Har.Law Review 633. He states, p. 650:

"If the defendant's active force has come to rest, but in a dangerous position, creating a new or increasing an existing risk of loss, and the foreseen danger comes to pass, operating harmfully on the condition created by defendant and causing the risked loss, we say that the injury thereby created is a proximate consequence of the defendant's act * * * ",

and at p. 652:

"The form of rule above stated is believed really to state the true distinction, and the one actually enforced by the courts. The wording of it, however, is not that ordinarily used. The commonest phrase, probably, is that the injury shall be the natural and probable result of the act; a phrase which involves at least a misuse of both adjectives. A more accurate phrase, which is gaining in use, is that the intervening force, unless it is to make the result remote, must be foreseeable * * * ".

We conclude that the intervening force of the Railroad's negligence which operated upon the condition caused by the negligence of the United States and thereby caused the injury to plaintiff was not a superseding cause and the United States is not relieved of liability. Although the negligence of the United States and the Railroad was not *concurring* in the strict sense of § 439 of the Restatement, nevertheless there was concurrent liability since the Railroad's negligence, though intervening, was not a superseding cause, sufficient to break the chain of causation.

It is immaterial that between the two defendants one may be primarily at fault for causing the harm and upon payment of damages would be entitled to indemnification.[10] Restat.Torts § 879. This question was raised for the first time by the brief of the United States on appeal. The problem would require pleadings, findings and decision below. It has no place in this opinion.

The judgment is affirmed.

---

**10.** In United States v. Rothschild International Steve. Co., 9 Cir., 1950, 183 F.2d 181, plaintiff's injury was caused by a defective winch owned or maintained by the government. The defect was known to the Stevedore company which nevertheless allowed its employees to work with the equipment. Judgment was entered in favor of plaintiff against the government, and the action dismissed against the stevedores. The circuit court, holding that the government was

---

entitled to full indemnity over, turned the case on the question of proximate cause. Though the case was properly decided on the question in issue of indemnification, query as to the statements on proximate cause. The case quotes the Restatement of Torts, comment on Sec. 441(1)b on the definition of active and passive negligence. No references are made to Sec. 440 (superseding cause) nor to Sec. 447 (foreseeability test).